685 A.2d 581

**REDEVELOPMENT AUTHORITY OF CAMBRIA COUNTY**

**v.**

**INTERNATIONAL INSURANCE COMPANY, Erie Insurance Group, Barr Township, Marsteller Community Water Authority, P. Joseph Lehman, Inc., Turjan Construction Company, Inc., and Kukurin Contracting, Inc.**

**Appeal of ERIE INSURANCE GROUP.**

Superior Court of Pennsylvania.

Argued May 6, 1996.

Filed Nov. 25, 1996.

376

David Kaltenbaugh, Ebensburg, for appellant.

Pamela G. Cochenour, Pittsburgh, for appellee Intern. Ins. Co.

Michelle A. Tokarsky, Johnstown, for participating party.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, President Judge Emeritus, DEL SOLE, BECK, POPOVICH, FORD ELLIOTT, SAYLOR and EAKIN, JJ.

McEWEN, President Judge:

This appeal has been taken from the order entered in response to the cross-motions for summary judgment filed by the parties to this declaratory judgment action instituted by appellee, the Redevelopment Authority of Cambria County, (hereinafter "Redevelopment Authority"), seeking a declaration that appellant, Erie Insurance Group (hereinafter "Erie"), and appellee International Insurance Company (hereinafter "International"), owed a duty to defend and to indemnify appellee Redevelopment Authority in the action filed against the Authority in 1992 by Barr Township and Marsteller Community Water Authority (hereinafter "MCWA"). We conclude that the learned trial court erred when it found that Erie was required, pursuant to the contract of insurance issued by Erie to the Redevelopment Authority, to defend the Redevelopment Authority in the action filed against it by the Township and the MCWA which sought damages arising from the alleged failure of the township water system (1) to comply with DER standards, and (2) to deliver potable water. We are, therefore, constrained to vacate the judgment entered in favor of the Redevelopment Authority.

The complaint filed by Barr Township against the Redevelopment Authority in the underlying action alleged that the Redevelopment Authority had entered into a contract with Barr Township and the MCWA, the entity created by Barr Township to own and operate the water system, to administer in excess of $525,000 in community block grant funds received from the Department of Community Affairs, and to provide the services necessary to supervise the construction of certain improvements to the water system.[1] The Township and the

---

1. The agreement provided, *inter alia:*

    WHEREAS, the TOWNSHIP OF BARR is ultimately responsible for administering the respective program funds as outlined in the formal application for funds.

WHEREAS, the respective program funds shall be used for Activities such as (1) the acquisition, design, engineering and construction of water system improvements in the Villages of Moss Creek and Marsteller, (2) the acquisition of required easements and rights-of-way, and (3) the proper administration, delivery and operation of the Activities.

THEREFORE, it is agreed between TOWNSHIP OF BARR and AUTHORITY as follows:

1.  AUTHORITY shall administrate, operate and manage all grant expenditures and program activities in full compliance with all applicable federal, state and local laws and regulations, as outlined in the formal application for 1985/1986 CDBG Program funds dated February 1987, through the Pennsylvania Department of Community Affairs.

2.  AUTHORITY shall provide or perform all planning, administration, legal, accounting, engineering, construction, consulting and monitoring services as may be required, and as may be necessary and incidental to the fulfillment of all program activities, to include but not be limited to the following:

a.  Compliance documentation for the required environmental review and clearance procedures.

b.  The presentation of all requests for payment in a timely and proper manner for the adequate funding of program needs.

c.  The performance of all program monitoring activities including:

■ the preparation and submission of all required program reports to the Commonwealth of Pennsylvania.

■ contract compliance and insurance of adequate work performance from subcontractors.

■ the collection and evaluation of program data needed for internal assessments of performance and compliance and for Commonwealth monitoring purposes.

■ the prompt response to citizen inquiries and/or complaints, with a report of such and their resolution being forwarded to the Commonwealth of Pennsylvania, and

■ the cooperation with and response to Commonwealth monitoring visits and any possible monitoring findings.

d.  Complete and adequate program record systems which will become fully vested in and retained by the TOWNSHIP OF BARR at final program close-out.

e.  Provision of the necessary and proper final program audit.

f.  Preparation and submission of the necessary, required and proper program close-out reports.

\*       \*       \*       \*       \*       \*

10.  Upon completion of activities, the AUTHORITY shall certify to TOWNSHIP OF BARR and any other party that to the best of its knowledge, information and belief, and on the basis of its work, observations and inspections, work has been completed in accordance with the terms and conditions of both the 1985/1986 CDBG Program Application and this Agreement.

11.  The AUTHORITY shall act and serve in a professional capacity, under and according to all provisions of the Commonwealth of Pennsylvania Urban Redevelopment Law of 1945, as amended.

MCWA claimed, in the three count complaint filed against the Redevelopment Authority, that the Redevelopment Authority had failed to "properly perform" the duties it had assumed under the contract, had been negligent, and had been unjustly enriched as a result of the retention of the monies paid to it to administer the project. The Redevelopment Authority contacted Erie and International Insurance Company upon receipt of the complaint, requesting that each insurance company defend and indemnify the Redevelopment Authority. Both companies denied that their policies imposed any duty to defend or to indemnify the Redevelopment Authority against the claims made by the Township and the MCWA.

In response, the Redevelopment Authority instituted the instant declaratory judgment action, seeking a declaration that Erie and International were obligated to defend the Redevelopment Authority in the action instituted against it by Barr Township and the MCWA, and that Erie and International were obligated to indemnify the Redevelopment Authority in the event that the Redevelopment Authority was found liable to the Township and the MCWA in the underlying action.

The trial court found that the Non–Profit Organization Liability Insurance policy issued by International did not require that International provide a defense to any action filed against the Authority but that Erie was obligated, pursuant to the terms of its general liability policy, to defend the Redevelopment Authority in the action instituted against it by the Township and the MCWA. The trial court declined to make a

"determination at this juncture as to whether Erie and/or International are required to indemnify the Authority if the township is successful.... While we have no doubt as to Erie's duty to defend, the answer to the question of whether Erie must indemnify the Authority in the event the township's action is successful is far removed from the certainty required for the entry of summary judgment. It is impossible to know on what basis (negligence, breach of contract, unjust enrichment) the township might recover (if at all) against the Authority; there are numerous exclusions in the

Erie policy which could prelude coverage, depending upon the theory of recovery."

## I. *Jurisdiction of Superior Court*

On March 8, 1995, Erie filed a notice of appeal at No. 00488 Pittsburgh 1995, as of right, pursuant to Pa.R.A.P. 341(a), from the order of February 7, 1995. Erie, for reasons addressed hereinafter, also filed on March 8, 1995, a motion requesting that the trial court certify the order of February 7, 1995, pursuant to Pa.R.A.P. 341(c)(1),[2] and filed an alternative motion requesting that the trial court amend the order of February 7, 1995, by adding the language specified in 42 Pa.C.S. § 702(b) so as to permit Erie to seek allowance of appeal pursuant to Pa.R.A.P. 312 and Pa.R.A.P. 1311. The trial court denied the request for certification of finality under Pa.R.A.P. 341(c)(1) by order dated March 8, 1995, and Erie filed a petition in the Superior Court at No. 29 Misc.Dkt. 1995, pursuant to Pa.R.A.P. 341(c)(2), for review of the order which had denied certification of the order of February 7, 1995. This petition for review was denied by order of the Superior Court dated April 18, 1995.

2. Pa.R.A.P. 341(c) provides:

(c) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order.

(1) An order may be amended to include the determination of finality within 30 days of entry of the order. A notice of appeal or a petition for review may be filed within 30 days after entry of an order as amended, unless a shorter time period is provided in Rules 903(c) or 1512(b).

(2) The trial court or other governmental unit is required to act on an application for a determination of finality under subdivision (c) within 30 days of the entry of the order. During the time an application for determination for finality is pending, the action will be stayed. Any denial of such an application shall be reviewable only for abuse of discretion pursuant to Chapter 15.

Pa.R.A.P. 341(c).

The trial court, however, by order dated April 5, 1995, amended, in response to the second petition filed by Erie, the order of February 7, 1995, to provide, pursuant to Section 702(b) of the Judicial Code, that a substantial ground for difference of opinion concerning Erie's duty to defend the Authority existed, so that an immediate appeal from the order of February 7, 1995, would advance the ultimate determination of the controversy. *See:* 42 Pa.C.S. § 702(b); Pa.R.A.P. 1311. Erie then filed at No. 52 Misc.Dkt. 1995, on May 5, 1995, a petition requesting leave to file an interlocutory appeal, which was denied by this Court by order dated July 19, 1995. On August 18, 1995, Erie sought allowance of appeal in the Supreme Court at No. 456 W.D.Allo.Dkt. 1995 from the Superior Court order of July 19, 1995. Although the Supreme Court initially granted allowance of the appeal by order dated February 27, 1996, at 9 W.D.Appeal Dkt. 1996, the appeal was subsequently dismissed by that Court on May 31, 1996.[3]

International, on May 3, 1995, filed a motion to quash the appeal which Erie had filed as of right at No. 488 Pittsburgh 1995 on the ground that the appeal had been improperly taken from an interlocutory order. By order dated July 19, 1995, the Superior Court denied International's motion to quash and International, on August 2, 1995, requested reconsideration of the order which had denied its motion to quash the appeal filed by Erie at No. 00488 Pitts.1995. Thus, despite the diligent advocacy of counsel for the Authority, the sole appeal now pending before this Court is the direct appeal as of right from the order entered by Judge Leahey on February 7, 1995, an appeal which International contends we must quash as interlocutory.

█ The Superior Court has jurisdiction to entertain appeals taken (1) as of right from a final order, Pa.R.A.P. 341, 42 Pa.C.S. § 742; (2) from interlocutory orders by permission,

---

**3.** The Supreme Court Order of May 31, 1996, provided:

AND NOW, this 31st day of May, 1996, this appeal is *sua sponte* dismissed as improvidently granted in view of the direct appeal pending in the Superior Court at No. 488 PGH 1995. Dismissal of the appeal is without prejudice to the parties to raise the substantive issues in a subsequent petition for allowance of appeal.

Pa.R.A.P. 312, Pa.R.A.P. 1311, 42 Pa.C.S. § 702(b); (3) from certain interlocutory orders as of right, Pa.R.A.P. 311; 42 Pa.C.S. § 702(a); and (4) from certain collateral orders, Pa. R.A.P. 313. *See, e.g.: Continental Bank v. Andrew Building Co.,* 436 Pa.Super. 559, 563–565, 648 A.2d 551, 553 (1994).

■ A final order is (1) any order that disposes of all claims or of all parties, (2) any order that is expressly defined as a final order by statute, or (3) any order entered as a final order pursuant to subsection (c) of Pa.R.A.P. 341. *See, e.g., Miller v. Steinbach,* 452 Pa.Super. 194, 681 A.2d 775 (1996); *Hahalyak v. Integra Financial Corp.,* 451 Pa.Super. 171, 172, 678 A.2d 819, 819 (1996); *Jerry Davis, Inc. v. Nufab Corp.,* 450 Pa.Super. 696, 697–699, 677 A.2d 1256, 1257 (1996).

■ An action for declaratory judgment is available to obtain a declaration of the existing legal rights, duties, or status of the parties where the declaration will aid in the determination of a genuine, justiciable controversy. *Fidelity Bank v. Pennsylvania Turnpike Commission,* 498 Pa. 80, 88–90, 444 A.2d 1154, 1158–1160 (1982); *Nationwide Mutual Insurance Co. v. Cummings,* 438 Pa.Super. 586, 590–591 n. 5, 652 A.2d 1338, 1340 n. 5 (1994), *allo. denied,* 540 Pa. 650, 659 A.2d 988 (1995). A declaratory judgment action is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming under the policy. *Liberty Mutual Insurance Co. v. S.G.S. Co.,* 456 Pa. 94, 95–99, 318 A.2d 906, 907–908 (1974); 42 Pa.C.S. § 7533 (construction of documents). *See also: Redevelopment Authority of the City of Philadelphia v. Insurance Company of North America,* 450 Pa.Super. 256, 675 A.2d 1256 (1996). The proper construction of an insurance policy is an issue which may be resolved as a matter of law in a declaratory judgment action. *Alexander v. CNA Insurance Co.,* 441 Pa.Super. 507, 509–511, 657 A.2d 1282, 1284 (1995). The Declaratory Judgment Act provides, *inter alia:*

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal rela-

tions *whether or not further relief is or could be claimed.* No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and *such declaration shall have the force and effect of a final judgment or decree.*

42 Pa.C.S. § 7532 (emphasis added).

This Court, in *Harleysville Mutual Insurance Co. v. Madison,* 415 Pa.Super. 361, 609 A.2d 564 (1992), reversed a trial court order which had dismissed a complaint in a declaratory judgment action wherein Harleysville Insurance Company had requested a determination of its duty to defend or indemnify a third party defendant in an underlying action. The Superior Court held that the trial court had improperly concluded that Harleysville had to await a resolution of the underlying negligence action prior to obtaining a declaration of its rights and duties under the contract of insurance. *Id.* at 364–366, 609 A.2d at 566.

The trial court in the instant case, while determining that Erie had a duty to defend the Authority in the underlying litigation, declined to rule on the issue of whether Erie or International had a duty to indemnify. The court concluded that a decision on the duty to indemnify could await resolution of the underlying action and specifically declined to rule on the issue of indemnity. Thus, while orders defining rights and duties in declaratory judgment actions are generally final orders, the order of February 7, 1995, specifically provided that a declaration of the right of the Authority to indemnification could be sought after trial.

However, while the order of February 7, 1995, did not dispose of all of the claims submitted to the court by the parties, Section 7532 of the Judicial Code specifically provides that a declaration in a declaratory judgment action "shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532. Erie, recognizing that, despite the language of Section 7532 of the Judicial Code, the order of February 7, 1995, resembled an interlocutory order, sought certification of the

order as final from the trial court, pursuant to Pa.R.A.P. 341(c)(1), and also sought, in the alternative, amendment of the order to include the statement specified in Section 702(b) of the Judicial Code so as to permit Erie to petition for allowance of appeal if its request for certification of the order as final was denied by the trial court or not acted on by the trial court within thirty (30) days of February 7, 1995. *See: Liberty State Bank v. Northeastern Bank of Pennsylvania,* 453 Pa.Super. 231, 683 A.2d 889 (1996). Rule 341(c) of the Rules of Appellate Procedure provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims or parties only upon an expressed determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such determination, entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order.

Pa.R.A.P. 341(c).

Under this Rule, a trial court may certify an interlocutory order as final upon an express determination that an immediate appeal would facilitate resolution of the entire case. If such a determination is made, an immediate appeal of an otherwise unappealable interlocutory order may be filed as of right within 30 days of the date of certification of the order. *Continental Bank v. Andrew Building Co.,* 436 Pa.Super. 559, 565–567, 648 A.2d 551, 554 (1994); *Robert H. McKinney Jr. Associates Inc. v. Albright,* 429 Pa.Super. 440, 441, 632 A.2d 937, 938 (1993). The trial court, in the instant case, denied the request for certification, precluding an appeal as of right by Erie under Rule 341(c).

Chapter 13 of the Pennsylvania Rules of Appellate Procedure allows for review of an interlocutory order via a petition for permission to appeal, *Hoover v. Welsh,* 419 Pa.Su-

per. 102, 615 A.2d 45 (1992), *allo. denied,* 535 Pa. 659, 634 A.2d 222 (1993), where the trial court has certified the order from which the appeal is sought, pursuant to 42 Pa.C.S. § 702(b)[4] and Pa.R.A.P. 1311(b). The Superior Court may exercise its discretion to permit an appeal from an interlocutory order if the order from which the appeal is sought contains the requisite certification or if the appellant, within 30 days of the entry of the order, files a request with the trial court for amendment of the order and the trial court acts to amend the order within 30 days thereafter.

As recounted above, Erie attempted to perfect an interlocutory appeal by permission so as to insure appellate review of the determination on coverage made by the trial court even if the order entered on February 7, 1995, was not a final order, and even if the trial court denied certification pursuant to Pa.R.A.P. 341(c). *Cf. Matukonis v. Trainer,* 441 Pa.Super. 570, 572–574, 657 A.2d 1314, 1315 (1995); *Bonner v. Fayne,* 441 Pa.Super. 432, 434–436, 657 A.2d 1001, 1002 (1995); *Womeldorf v. Cooper,* 654 A.2d 238, 240 (Pa.Cmwlth.1995).

■ This case epitomizes the difficulties which can be encountered by a prudent and diligent practitioner in attempting to unravel the intricacies of the question of the finality of orders for purposes of appellate review. *See:* Zygmont A. Pines, **Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction,** 91 Dick.L.Rev. 56 (1986). While there can be no dispute that this Court could have granted allowance of appeal pursuant to Pa.R.A.P. 1311 based upon the trial court's certification of the order, in light of the express statutory provision in Section 7532 of the

---

**4.** Section 702(b) states:

**(b) Interlocutory appeals by permission.**—When a court or other government unit, in making an interlocutory order in a manner in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon in its discretion, permit an appeal to be taken from such an interlocutory order. 42 Pa.C.S. § 702(b).

Judicial Code which provides that orders entered in declaratory judgment actions shall have the force and effect of a final order, and in light of the fact that counsel for appellant have diligently attempted to perfect the jurisdiction of this Court via both the procedure applicable to direct appeals as well as the procedure applicable to interlocutory appeals by permission, we find that we are possessed of jurisdiction to proceed in this matter and, therefore, deny the motion to quash filed by appellee.

## II. *General Liability Policy Issued by Erie*

Our scope of review of an appeal from an order granting summary judgment is plenary:

> In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. Summary judgment should only be granted in those cases which are free and clear from doubt. Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law.

*Phico Insurance Co. v. Presbyterian Medical Services Corporation,* 444 Pa.Super. 221, 224, 663 A.2d 753, 755 (1995), *quoting American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 179–181, 628 A.2d 880, 885 (1993). *Accord: Marks v. Tasman,* 527 Pa. 132, 134–135, 589 A.2d 205, 206 (1991); *Hertz Corp. v. Smith, supra* at 577–578, 657 A.2d at 1317; *Madison Construction Co. v. The Harleysville Mutual Insurance Co.,* 451 Pa.Super. 136, 141, 678 A.2d 802, 804 (1996).

The standards to be applied in reviewing coverage questions arising under insurance contracts are well settled.

"The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved." *Hertz Corporation v. Smith,* 441 Pa.Super. 575, 578, 657 A.2d 1316, 1317 (1995) (citations omitted). *Accord: Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649 (1994), *allo. denied,* 540 Pa. 575, 655 A.2d 508 (1994); *Dibble v. Security of America Life Ins. Co.,* 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991). While a determination as to the reasonable expectations of the insured must be based upon the totality of the insurance transaction involved, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mutual Ins. Co.,* 527 Pa. 241, 244–246, 590 A.2d 281, 283 (1991); *St. Paul Mercury Insurance Co. v. Corbett,* 428 Pa.Super. 54, 58–60, 630 A.2d 28, 30 (1993). However, where a provision of an insurance policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer. *Britamco Underwriters, Inc. v. Weiner, supra; Bateman v. Motorists Mut. Ins. Co., supra* at 244–246, 590 A.2d at 283; *Madison Construction Co. v. The Harleysville Mutual Insurance Co., supra* at 142, 678 A.2d at 805.

The general liability coverage policy issued by Erie to the Authority provided, in pertinent part, as follows:

Our Promise

Personal Injury Liability—Coverage A

Property Damage Liability—Coverage B

We will pay for damages because of personal injury or property damage **for which the law holds anyone we protect responsible and which are covered by your policy.** We cover only personal injury and property damage which occurs during the policy period. The personal injury or property damage must be **caused by an occurrence** which takes place in the covered territory. (emphasis supplied)

We will pay any additional sums or perform any additional acts or services that are explicitly covered under what we also pay, and nothing else.

Advertising Injury Liability—Coverage C

We will pay for damages because of advertising injury for which the law holds anyone we protect responsible and which are covered by your policy. We cover only advertising injury caused by an offense committed during the policy period and in the course of advertising your goods, products or services and which takes place in the covered territory.

\* \* \* · \* \* \*

Medical Payments—Coverage D

We will pay all reasonable medical expenses to any person **injured by an occurrence.** We will cover only medical expenses resulting from an occurrence which takes place during the policy period and in the covered territory. The services must be rendered within three years of the occurrence. The occurrence must arise from a condition in the premises or operations shown on the declarations. The three year limitation does not apply to funeral expenses.

\* \* \* \* \* \*

Coverages A, B, C and D

We may investigate or settle any claim or suit for damages against anyone we protect, at our expense. If anyone we protect is sued for damages covered by this policy, we will defend with the lawyer we choose, even if the allegations are not true. Our obligation to pay any claim or judgment or defend any suit ends when we have used up our limit of protection by paying judgments or settlements under coverages A, B, C or D.

Appellant, Erie, in the new matter contained in its answer to the complaint filed in the declaratory judgment action, claimed that since the underlying action against the Redevelopment Authority involved allegations arising out of and based upon the breach of contractual duties by the Authority, not falling within the required definition of an "occurrence", Erie had no duty under the contract of insurance to defend or to

indemnify the Redevelopment Authority in the underlying action.

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverages. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 582, 533 A.2d 1363, 1368 (1987). Moreover, the insurer agrees to defend the insured against any suit arising under the policy "even if such suit is groundless, false, or fraudulent." *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 56, 188 A.2d 320, 321 (1963). Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Id.*; *see also Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954); *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050 (1992); *Youngman v. CNA Ins. Co.*, 401 Pa.Super. 381, 585 A.2d 511 (1991). In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint. *Biborosch*, 412 Pa.Super. at 509, 603 A.2d at 1052 (citing *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959)).

*Britamco Underwriters v. Grzeskiewicz*, 433 Pa.Super. 55, 59, 639 A.2d 1208, 1210 (1994).

*Phico Insurance Co. v. Presbyterian Medical Services Corp.*, *supra* at 225, 663 A.2d at 755.

██ Our review of the applicable case law from this and other jurisdictions compels the conclusion that Erie correctly asserts that it has no duty to defend or indemnify the Authority since the underlying suit arises out of a breach of contract which is not an accident or occurrence contemplated or covered by the provisions of a general liability insurance policy. While Barr Township and the MCWA have employed negligence concepts in drafting their complaint, it cannot be disputed that their claims arise out of and are based upon duties

imposed upon the Authority solely as a result of the contract between the Authority and Barr Township through the MCWA. The complaint, as drafted by Barr Township and the MCWA, seeks damages allegedly caused by the failure of the Authority to perform the duties set forth in its contract with the Township, alleging, *inter alia,* that the Authority "did not properly perform its duties ..., but did so negligently, carelessly and unskillfully and thereby failed to perform its duty, which failure was the proximate cause of [Barr Township's] injuries...."

The contract of insurance issued by Erie to the Authority is a general liability policy, providing for a duty to defend and expressly written to provide primary insurance coverage even when other insurance is available. The purpose and intent of such an insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking. *See: Phico Insurance Co. v. Presbyterian Medical Services Corp.,* supra at 225–229, 663 A.2d at 756–757; *Hertz Corporation v. Smith,* supra at 581–583, 657 A.2d at 1319; *Ryan Homes Inc. v. Home Indemnity Co.,* 436 Pa.Super. 342, 348–350, 647 A.2d 939, 942 (1994), *allo. denied,* 540 Pa. 621, 657 A.2d 491 (1995); *Toombs N.J., Inc. v. Aetna Casualty and Surety Co.,* 404 Pa.Super. 471, 474–476, 591 A.2d 304, 306 (1991). The trial court in the instant case, recognizing that the Township and the MCWA had employed negligence concepts in the allegations of the complaint, concluded that the general rule precluding coverage for claims sound in assumpsit was inapplicable.[5]

The determination as to whether causes of action sound in contract or in tort is difficult due to the somewhat confused state of our law. *See Grode v. Mutual Fire, Marine, and*

---

5. The trial court noted that the duty to defend is more broadly interpreted than the duty to indemnify. *Accord: Solcar Equipment Leasing Corp. v. Pennsylvania Manufacturers' Asso. Insurance Co.,* 414 Pa.Super. 110, 119–121, 606 A.2d 522, 527 (1992); *Phico Insurance Co. v. Presbyterian Medical Services Corp.,* supra at 223–225, 663 A.2d at 755; *Britamco Underwriters v. Grzeskiewicz,* supra at 59, 639 A.2d at 1210.

*Inland Insurance Co.,* 154 Pa.Commw. 366, 623 A.2d 933
(1993) (noting the existence of confusion in the area)....
We believe the simple rule expressed in *Raab [v. Keystone
Insurance Co.,* 271 Pa.Super. 185, 412 A.2d 638 (1979) ] is
inadequate to determine the true character of a claim.
Although the rule certainly sets forth a bright and easily
discernable line for considering the nature of a claim, it is
not difficult to imagine many agreement-based complaints
which may be characterized as sounding in tort when they
more properly should be seen as contractual. Therefore, we
turn to the second line of cases, which we believe more
appropriately addresses the characterization issue.

In *Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 601 A.2d
825 (1992), we took a somewhat different approach to the
issue. In that case, which arose in connection with the
breach of an agreement relating to the publication of a
telephone directory advertisement, we examined federal
authority and indicated that to be construed as a tort action,
the wrong ascribed to the defendant must be the gist of the
action with the contract being collateral. In addition, we
noted that a contract action may not be converted into a tort
action simply by alleging that the conduct in question was
done wantonly. Finally, we stated that the important dif-
ference between contract and tort actions is that the latter
lie from the breach of duties imposed as a matter of social
policy while the former lie for the breach of duties imposed
by mutual consensus.

We note that *Bash* is consistent with the approach taken in
*Toombs N.J. Inc. v. Aetna Casualty & Surety Co.,* 404
Pa.Super. 471, 591 A.2d 304 (1991). In that case, we
considered whether a complaint relating to the breach of an
agreement to establish two restaurants alleged tortious
claims that were covered under an insurance policy. We
briefly examined the claims asserted in the complaint and
found that the action both in its essence and upon its face
was one for breach of contract. In addition, we noted:

> To allow indemnification under the facts presented here
> would have the effect of making the insurer a sort of

silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

*Id.,* 404 Pa.Super. at 476, 591 A.2d at 306.

Although appellant contends that the claims asserted in Delaware Valley's complaint were both contractual and tortious in nature, its contention must fail. Our review of the complaint in question demonstrates that the action related only to appellant and Delaware Valley and arose out of the former's performance of a management agreement. Consequently, while Delaware Valley included allegations that appellant engaged in both gross negligence and willful misconduct, the agreement unquestionably was not collateral to any of its claims.

*Phico Insurance Co. v. Presbyterian Medical Services Corp.,* *supra* at 227–230, 663 A.2d at 756–758 (footnotes omitted).

Similarly, the Wyoming Supreme Court, in addressing whether a general liability insurance policy provided coverage for claims arising from the negligent breach of an obligation to obtain medical insurance for an employee, in a well-reasoned opinion, observed:

Courts universally have interpreted liability-coverage provisions, identical to that found in appellants' policy, as referring to liability sounding in tort, not in contract. *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.,* 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979), is a representative case. There Devonshire, a general-insurance agent, had issued a $500,000 fire-insurance policy on a clubhouse. Under a separate contract with the insured, Devonshire had

agreed either to obtain additional insurance or to indemnify the insured for damages in excess of $500,000. Devonshire failed to obtain the extra insurance. The [Drexelbrook] clubhouse burned, and the insured obtained a judgment against Devonshire for more than $800,000. Devonshire sought to hold its liability-insurance carrier responsible for that judgment. In ruling for the insurer, the California Court of Appeals interpreted a comprehensive-liability provision, identical to the coverage provision in the present case, as extending to liability based only on tort claims:

> "The phrase 'legally obligated to pay as damages' as used in the * * * * [liability] policy, is synonymous with 'damages for a liability imposed by law.' That latter phrase has been uniformly interpreted as referring to a liability arising *ex delicto* as distinguished from *ex contractu.* (*Ritchie v. Anchor Casualty Co.*[, 135 Cal.App.2d 245, 286 P.2d 1000 [1995].]) The theory that Devonshire assumed liability * * * * for which * * * [its liability insurer] provided coverage cannot be sustained by the terms of the policy or applicable law." 155 Cal.Rptr. at 875.

The Supreme Court of Alaska considered a factual situation similar to the case at bar in *Continental Insurance Company v. Bussell,* 498 P.2d 706 (Alaska 1972). In that case, an employer agreed in a union contract to purchase life insurance for his employees who traveled in aircraft in the course of business. The employer purchased a liability-insurance policy, but failed to acquire the promised life insurance. When an employee perished in an airplane crash, the estate sued for the $25,000 "death benefit" under the union contract. The employer filed a third-party claim against Continental Insurance Company, his liability insurance carrier. The Alaska Supreme Court held that Continental Insurance Company had no obligation to defend the employer or to pay the $25,000 death benefit. In interpreting the standard comprehensive general-liability clause with which we are concerned, as well as a contractual-liability provision not pertinent here, the court said:

"Neither of the coverage portions in issue applies to damages arising from an insured's breach of a contractual duty. There is no language in any section of the policy which even tangentially alludes to coverage protecting against breaches of contract." 498 P.2d at 710.

Other cases reaching the same conclusion include *Olympic, Inc. v. Providence Washington Insurance Company of Alaska*, 648 P.2d 1008 (Alas.[Alaska]1982); *Kisle v. St. Paul Fire and Marine Insurance Company*, 262 Or. 1, 495 P.2d 1198 (1972); *Boiler Brick and Refractory Co. v. Maryland Casualty Co.*, 210 Va. 50, 168 S.E.2d 100, 102 (1969).

Rowland H. Long in his treatise, **The Law of Liability Insurance,** summarized the uniform judicial interpretations of standard liability-coverage provisions found in current and earlier policies:

"The promise in the insuring provision of the earlier liability insurance policies is to pay all sums by reason of liability 'imposed upon the insured by law for damages.' In more recent editions of the policy, the promise is to pay all sums 'which the insured shall become legally obligated to pay as damages.' Damages 'imposed by law' and damages which a person is 'legally obligated' to pay express the same thought. The law imposes upon the insured a liability to pay damages for bodily injuries or damage to property caused by his carelessness and arising out of the ownership, maintenance, care, custody, or use of property. This is the liability upon which the insurer agrees 'to pay on behalf of the insured all sums which the insured shall become legally obligated to pay.' This provision limits the insurer's obligation. 'Liability imposed by law for damages' or damages which the insured becomes 'legally obligated' to pay exclude the concept of liability which the insured may have voluntarily assumed * * *." 1 Long, Law of Liability Insurance, § 1.10, p. 1–25.

See also 7A Appleman, Insurance Law and Practice (Berdal ed.), § 4493, pp. 55–56 (1979).

*        *        *        *        *        *

We conclude that the coverage clause at issue in the present case encompasses liability which the law imposes on all insureds for their tortious conduct and not on the liability which a particular insured may choose to assume pursuant to contract. Action Ads' potential liability in this case stemmed not from its own negligent behavior, but from a contractual obligation. Therefore, Great American had no duty under the comprehensive general-liability insurance policy to defend Action Ads.

*Action Ads Inc. v. Great American Insurance Co.*, 685 P.2d 42, 43–45 (Wyo.1984). *Accord: Pace Construction Co. v. U.S. F. & G. Insurance Company,* 934 F.2d 177, 179–180 (8th Cir.1991).

The Redevelopment Authority in the instant case is similarly seeking to convert a general liability policy into a professional liability policy or a performance bond. The express provisions of the insurance contract do not provide coverage for the claims in the underlying action which arise out of and relate to the contract between the parties, and the Authority, upon reading the contract of insurance issued by Erie, could not have reasonably expected that the Erie policy was to act as a performance bond insuring the performance of the contractual duties which the Authority undertook pursuant to the 1987 contract with Barr Township and the MCWA. We, therefore, hold that, pursuant to the express terms of the policy, Erie has no duty to defend or to indemnify the Redevelopment Authority in the action filed against it by Barr Township and the MCWA.

### III. THE NON–PROFIT ORGANIZATION LIABILITY INSURANCE POLICY ISSUED BY INTERNATIONAL INSURANCE COMPANY

#### A. Duty to Defend

■ The insurance policy issued by International to the Authority was a Non–Profit Organization Liability Insurance Policy, a claims made and reported indemnity type policy which (1) does not provide for a defense of any action, and (2)

expressly provides coverage only in excess of other available coverages. The policy, which, we reiterate for emphasis, was expressly written to provide coverage only in excess of all other available coverage, provided, in pertinent part:

In the event of a claim, the Insureds shall take reasonable measures to protect their interests. If defense of a suit shall be required then the Insured shall appoint counsel.

The trial court properly gave effect to the unambiguous language of the insurance policy, and found that there was no duty on the part of International to provide a defense to the Redevelopment Authority in the underlying action. *Alexander v. CNA Ins. Co.*, 441 Pa.Super. 507, 509–511, 657 A.2d 1282, 1284 (1995).

## B. *Duty to Indemnify*

International, in support of its motion for summary judgment, argued in the trial court that its policy did not provide coverage for claims arising from a breach of contract since the policy definition of loss, in employing the phrase "legally obligated to pay", precluded any finding that International could be liable to indemnify the Authority for a liability imposed upon the Authority as a result of its breach of a contract as opposed to a loss incurred as a result of negligence. International, which relied for its argument upon the rationale recounted in the cases earlier reviewed, did not file a cross appeal and thus the issue of International's duty to indemnify the Authority has not been fully briefed by the parties on appeal.

While the International policy specifically excludes claims "based on professional negligence" [6], the policy expressly provides coverage for a wider range of claims than the general

---

**6.** The Professional Liability Exclusion clause contained in the International policy provides, in pertinent part:

This policy shall not apply to claim(s) based upon, arising out of, or attributable to any actual or alleged errors or omissions committed or alleged to have been committed by an insured or by any member of the insured organization in the rendering of or failure to render professional services as attorney at law, medical personnel, architect, engineer, or accountant.

liability policy issued to the Redevelopment Authority by Erie. The International policy provides, in pertinent part:

## NON-PROFIT ORGANIZATIONS LIABILITY INSURANCE

IN CONSIDERATION of the payments of the premium and subject to all of the terms, conditions and exclusions of this Policy, the Company agrees with the Insureds under Coverage A and the Entity under Coverage B as follows:

## INSURING AGREEMENTS

I.   Coverages A and B

A.   The Company will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.

B.   The Company will reimburse the Entity for all Loss for which the Entity shall be required by law to indemnify individual Insureds for any civil claim or claims first made against them because of a Wrongful Act, provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.

\*     \*     \*     \*     \*     \*

III.   Definitions

A.   "Insureds" shall mean the Entity and any Individual who was, now is, or shall be a Director, Officer, Trustee, Employee, Volunteer or Staff member of the Entity and shall include any Executive, Board Member and Committee Member whether salaried or not.

B.   "Entity" shall mean only that non-profit Organization, Association or Corporation which is named in the Declarations and is legally constituted at the inception date of this policy and any non-profit subsidiaries that existed at the time the application was completed. Coverage will

automatically apply to all non-profit subsidiaries formed or acquired after the inception date of this policy, subject to (1) written advice to the company within 90 days of acquisition or formation, and (2) payment of any additional premium required.

C. "Subsidiary" shall mean any non-profit Organization, Association or Corporation of which the Entity named in A. of the Declarations Page owns more than 50% of the outstanding voting stock.

D. The term "Wrongful Act" shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by one or more of the individual Insureds while acting in their capacity as an authorized representative of the Entity, subject to the further terms, conditions and limitations of this policy.

E. "Loss" shall mean any amount which the Insureds are legally obligated to pay or which the Entity shall be required, or permitted by law to pay as indemnity to the Insureds, for any claim or claims made against them, for Wrongful Acts and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation and defense of legal actions (excluding from such cost the salaries of officials or employees of the Entity), claims or proceedings and appeals therefrom, cost of attachment or similar bonds; provided always, however, such subject of loss shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

IV. Exclusions.

The Company shall **not** be liable to make payment for Loss in connection with any claim made against the Insureds allegedly, based upon or arising out of any one or more of the following: (emphasis added)

1. **An Insured gaining any personal profit or advantage to which they were not legally entitled** (emphasis added);

2. **The return by the Insureds of any remuneration paid in fact to them if payment of such remuneration shall be held by the courts to be in violation of law** (emphasis added);

3. Brought about or contributed to by the dishonesty of the Insureds, however, notwithstanding the foregoing, the Insureds shall be protected under the terms of this policy as to any claims upon which suit is brought against them by reason **of any alleged dishonesty on the part of the Insureds, unless a judgment or** other final adjudication thereof adverse to the Insureds shall establish that acts of active and deliberate dishonesty committed by the Insureds with actual dishonest purpose and intent were material to the cause of action so adjudicated;

4.a. Claims, demands or actions seeking relief, or redress, in any form other than money damages;

b. For fees or expenses relating to claims, demands or actions seeking relief or redress, in any form other than money damages;

5.a. Any damages, whether direct, indirect or consequential, arising from, or caused by, bodily injury, personal injury; sickness, disease or death;

b. Loss or criminal abstraction of, damage to or destruction of any tangible property or the loss of use of such property by reason of the foregoing;

6.a. Defamation, including, but not limited to libel or slander;

b. A publication or utterance in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Entity;

7. The willful violation of statute or ordinance committed by or with the knowledge or consent of an Insured;

8. The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water;

9. The Insured's activities in a fiduciary capacity as respects any employee benefit plan.

Exclusions (1.) and (2.) do not apply to Coverage B.

■ While we believe that the issue of International's duty to indemnify the Redevelopment Authority is a question amenable to resolution via an action for declaratory judgment, *see, e.g., Solcar Equipment Leasing Corp. v. Pennsylvania Manufacturers' Assoc. Insurance Co., supra* at 119–121, 606 A.2d at 527, we may not resolve this issue as it has not been raised by the parties in this appeal. *"Sua sponte* consideration of issues deprives counsel of the opportunity to brief and argue the issues and the court of the benefit of counsel's advocacy." *Wiegand v. Wiegand,* 461 Pa. 482, 485, 337 A.2d 256, 257 (1975).

The order of February 7, 1995, is vacated and the case remanded for entry of summary judgment in favor of Erie and International and against the Redevelopment Authority on the issue of the duty to defend.

Order reversed. Case remanded. Jurisdiction relinquished.

DEL SOLE, J., files a concurring and dissenting opinion.

DEL SOLE, Judge, concurring and dissenting:

While I agree with the conclusion that the present appeal is properly before us for review, I do so for reasons different than those expressed by the Majority. Further, I write separately to note my dissent on the issue of Erie's duty to defend because my interpretation of the policy language and the Complaint filed against Erie's insured, the Redevelopment Authority, causes me to conclude that Erie does have a duty to defend.

The Majority cites to Appellant's diligent efforts to perfect jurisdiction and Section 7532 of the Judicial Code, 42 Pa.C.S. § 7532, in determining the finality of the instant order which ruled that Erie had an obligation to defend but left undeter-

mined the matter of indemnity. In my view, it is the nature of the order at issue which dictates that it is final and appealable.

The trial court's determination that Erie had a duty to defend, effectively ended the declaratory judgment action. The trial court, in ruling that Erie had a duty to defend, found that the claim made against the Redevelopment Authority was of the type which would fall under the coverage offered by Erie. This is all that could be done in this declaratory judgment action. Enforcement could arise only in a garnishment proceeding after the conclusion of a trial and the entry of a verdict against its insured. Because the declaratory judgment action was concluded at the entry of the court's order, it was appropriate for Erie to appeal from that order if it desired to have it reviewed. Erie did file a timely appeal from the trial court order granting summary judgment in this declaratory judgment action, thus this matter is properly before us for review.

Upon review of the issue presented in this appeal, I must dissent. The Majority finds that Erie had no duty to defend or indemnify the Redevelopment Authority in the underlying action since the allegations in that action were based upon the breach of contractual duties. While noting that the complaint contained allegations which "employed negligence concepts," Majority Opinion at 390, the Majority concludes that the claims are a result of the contract which was alleged to have been breached. However, there is at least one claim made in the underlying Complaint which does not concern a breach of contract.

In paragraph 20C. of the Complaint, there is a claim regarding the method of selecting an engineer. It states:

Despite full receipt of the bargained for consideration on the part of the Defendants, the bargained for benefit has not been achieved for the Marsteller Community Water Authority as designated beneficiary of the agreements referred to above, including the following:

C. The Defendants, specifically the Engineer, but also the Redevelopment Authority, in not monitoring or review-

ing or in otherwise being negligent in the method of selection of the Engineer, caused harm to the Marsteller Community Water Authority by specifying, installing and paying for improperly designed or sized components to the system, including:

(a) Design of water treatment system for the system was based on data from source other than utilized;

(b) Design of pumps, motor and feed system from water source are inadequate to provide efficient and regular supply to water tank;

(c) Improper and inadequate storage tank.

This claim goes beyond a breach of contract, and it alone would create a duty upon Erie to defend its insured. While ultimately there may not be a duty to indemnify, a duty to defend arose because of this allegation contained in the Complaint. The policy issued by Erie provides coverage for negligent acts. The allegation regarding the negligent hiring of an engineer, creates the duty to defend. It is for this reason that I cannot join the Majority opinion, and express my dissent.