# Nationwide Mutual Insurance Co. v. Klinger

226

*Jarad W. Handelman,* for plaintiff.
*Marc Lieberman,* for defendant Klinger.
*James A. Zurick,* for defendant Apollo.
*Christopher Coyle,* for defendant Bennetch.
*Edward L. Brady,* for defendant Farrow.

SAYLOR, *J.,* July 10, 2003—This case arises as a result of a motor vehicle accident that occurred on November 7, 1999, in which defendants Klinger, Farrow and Bogetti were injured. Klinger was driving a 1984 Chevrolet Caprice Classic he had recently purchased on October 1, 1999, when he lost control of the vehicle striking a pole. At issue is whether the insurance covering another vehicle of Klinger, a 1988 Ford Ranger insured by plaintiff Nationwide through its agent Susan Hartsock, extended also to the Caprice. Nationwide filed a complaint seeking declaratory judgment against all named defendants for a determination as to whether it is obli-

gated to provide coverage and benefits for any claims stemming from the accident involving the Caprice. Following a bench trial in this matter, the court now enters the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

(1) On June 23, 1999, plaintiff Nationwide issued an insurance policy to defendant Klinger covering a 1988 Ford Ranger.

(2) This policy covered "physical damage" to a four-wheel motor vehicle newly acquired by Klinger provided, inter alia, such acquisition was reported to the insurer during the first 30 days.

(3) In a separate provision, this policy covered "auto liability" for a four-wheel motor vehicle newly acquired for the first 30 days Klinger owned such vehicle.

(4) On October 1, 1999, Klinger purchased and took possession of the 1984 Caprice from defendants David and Greta Bennetch by giving $300 in cash to Greta who, in return, gave Klinger a signed, handwritten paper they entitled a "bill of sale."

(5) No party has contended that the Caprice was a replacement for the Ford Ranger, and Klinger had both vehicles available to him for his use.

(6) Susan Hartsock was an insurance agent for Nationwide at all relevant times, and previously acted as an agent in the issuance of the policy covering the Ford Ranger.

(7) On October 1, 1999, immediately after purchasing the Caprice, Klinger and his father went to Hartsock's office to insure it.

(8) Klinger told Hartsock he bought the Caprice.

(9) Hartsock told the Klingers to return when they received the "pink slip" (Pennsylvania Department of Transportation MV-4, vehicle purchase form) as it would have the vehicle identification number.

(10) Hartsock neither made any notation memorializing this meeting nor took any steps to insure the Caprice (she denied that she was ever notified about the Caprice or that the Klingers came to her office that day; however, the court has accepted the Klingers' testimony in this regard).

(11) Klinger never obtained the "pink slip" or returned to Hartsock's office.

(12) Neither Hartsock nor Nationwide contacted Klinger concerning any additional premium to be paid.

(13) Thirty-eight days after acquiring the vehicle, on November 7, 1999, Klinger was driving the Caprice when he lost control of the vehicle and collided with a pole (the subject accident) injuring himself and his passengers, defendants Farrow and Bogetti.

## II. CONCLUSIONS OF LAW

Having found that Klinger acquired the Caprice and notified Hartsock thereof on October 1, 1999, the court must now determine whether that finding compels the conclusion that Klinger was covered for liability regarding this vehicle and the accident that occurred 38 days later. Although all parties agreed, prior to trial, that notification by Klinger to Hartsock of his purchase of the Caprice was enough to ensure coverage, a close reading of the policy fails to clearly support this contention.[1] The

---

1. At trial, after the court raised the issue upon review of the policy language, plaintiff has taken the position that even if Klinger notified

court must therefore, taking the policy as a whole, determine whether a finding of notification necessarily requires liability coverage.[2]

Initially, the court must consider the apparent lack of effort put forth to properly insure the Caprice. Klinger did nothing more than tell Hartsock he bought an additional vehicle. He failed to follow through, as requested, by returning to Hartsock's office with the "pink slip" for the Caprice. Nor did he further inquire as to any added premium or whether any evidence of such insurance was forthcoming. For her part, Hartsock failed to even memorialize the meeting with Klinger, perhaps under the assumption that Klinger would promptly return with the requested information. Klinger's efforts to produce the "pink slip," however, were frustrated by his inability to coordinate the execution of the same with David Bennetch due to a conflict of work schedules between them. This seems to be a reasonable explanation for such failure and, in light of the fact that neither Hartsock nor Nationwide contacted Klinger after October 1, 1999 regarding any additional premium or the need for the "pink slip," such failure is not fatal to any claim Klinger has for coverage.

---

Hartsock of the acquisition of the Caprice Classic, Klinger was only covered for physical damage to the vehicle, not liability associated therewith.

2. This court was unable to locate any cases involving similar contract language and counsel for the parties did not reference any case that dealt with the issue in the context of the policy language present here. Plaintiff has directed the court's attention to *Shelby Mutual Insurance Co. v. Kistler,* 347 Pa. Super. 222, 500 A.2d 487 (1985). However, *Shelby* is distinguishable in that it involved a policy liability section that required notice and an accident that occurred within that 30-day notice period.

The Nationwide policy covering Klinger's Ford Ranger provides coverage for "physical damage" to a newly acquired four-wheel motor vehicle.[3] The acquisition of such vehicle must be reported to the insurer during the first 30 days of ownership. No limit as to the length of this coverage extension is stated, so long as the notice is given. Under this policy provision, Klinger was also responsible for paying any premiums resulting from this extension of coverage.

Of course, this policy also covers "auto liability" for newly acquired vehicles.[4] Paradoxically, this provision

---

3. The pertinent section of the policy states as follows:

"Physical damage coverages . . . Coverage extensions . . . Use of other motor vehicles

"The insurance on your auto also covers other motor vehicles as follows: . . . 2. A four-wheel motor vehicle newly acquired by you. You must report the acquisition of the vehicle to us during the first 30 days you own the vehicle. Also, if the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension to apply. We provide this coverage only if you do not have other collectible insurance. You must pay any added premium resulting from this coverage extension." Nationwide Century II Auto Policy at p. 4 as amended by Amendatory Endorsement at p. 1.

4. The pertinent section of the policy states as follows:

"Auto liability . . . Coverage extensions . . . Use of other motor vehicles

"This insurance also applies to certain other motor vehicles as follows: . . . 2. A four-wheel motor vehicle newly acquired by you. This coverage applies only during the first 30 days you own the vehicle unless it replaces your auto. If the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply. We provide this coverage only if you do not have other insurance. You must pay any added premium resulting from this coverage extension." Nationwide Century II Auto Policy at p. 7 as amended by Amendatory Endorsement at p. 3.

differs from the "physical damage" coverage as it applies only during the first 30 days of ownership. This provision, unlike the previous one, does not require any notice to the insurer. As with the "physical damage" provision, this coverage requires the payment of any added premium.

Thus, Klinger, by contacting his agent, was covered under the existing policy for the newly acquired Caprice for "physical damage." This coverage continued indefinitely until such time as Klinger failed to pay a premium or Nationwide cancelled it. By the terms of the insurance policy, however, it would appear that "auto liability" coverage ceased after 30 days. There is no indication in the policy as to how one would extend liability coverage beyond the 30 days. It is quite surprising that one would have an automobile policy that provides, after notice, indefinite coverage for the damage to a newly acquired vehicle, but limits the liability protection that an owner is required to carry under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) to only 30 days.

Under this policy, giving the words their ordinary meanings, if the insured buys an additional vehicle and notifies the insurer within 30 days, he is apparently covered indefinitely for "physical damage" but not for "auto liability." As there is no indication as to how to extend "auto liability" past 30 days, one must ask how this is accomplished. In this court's view, this creates an ambiguity as to the construction of these provisions. Reading the "auto liability" provision in light of the "physical damage" provision, however, one may reasonably conclude that notifying the insurer of the purchase would

accomplish the task of extending the policy for *all* purposes, especially the coverage mandated by law under the MVFRL, that is, liability coverage.

When determining issues of insurance contract coverage, the proper focus is the "reasonable expectation of the insured." *Kvaerner U.S. Inc. v. Commercial Union Ins. Co.,* nos. 973 EDA 2001 and 1212 EDA 2001, 2003 WL 1878761 at *2 (Pa. Super. Apr. 16, 2003) (quoting *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996) (en banc)). The court must consider the totality of the insurance transaction. *Id.* "While a determination as to the reasonable expectations of the insured must be based upon the totality of the insurance transaction involved, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Id.*

Contract terms are ambiguous if they are capable of "more than one reasonable interpretation when applied to a particular set of facts." *Wagner v. Erie Insurance Co.,* 801 A.2d 1226, 1231 (Pa. Super. 2002), *appeal granted in part by* 573 Pa. 30, 820 A.2d 160 (2003) (quoting *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999)). A provision is only ambiguous when, reading the contract in its entirety and giving words their ordinary meanings, reasonably intelligent minds could honestly differ as to its meaning. *Jefferson v. State Farm Insurance Companies,* 380 Pa. Super. 167, 170, 551 A.2d 283, 284 (1988) (citing *Adelman v. State Farm Mutual Automobile Insurance Co.,* 255 Pa. Super. 116, 123, 386 A.2d 535, 538 (1978)). "Any truly ambiguous term must be given a construction favorable to the insured." *Id.*

Here, Klinger notified Hartsock of the acquisition of the Caprice as required under the policy. One providing this notice can reasonably expect that such notice would ensure coverage for all purposes, not merely for "physical damage." Yet, reading the "auto liability" provision by itself, it appears something more than notice may be required to extend such coverage beyond 30 days. This accident occurred after Klinger had the vehicle for 38 days, so on the policy's face by a literal reading, he was no longer covered for liability purposes. As noted previously, however, this court must consider the meaning of a provision in the context of the entire policy. Reading the "auto liability" provision in conjunction with the "physical damage" section, one may reasonably conclude that notice is enough to trigger extended coverage. As there is no clear indication to the contrary, the court must construe these provisions against the insurer with the result that notification to the insurer of the purchase of a new vehicle is all that is required to extend liability coverage past the initial 30 days following acquisition, at least until termination occurs by virtue of some other reason, such as nonpayment of premium.

Klinger bought the Caprice on October 1, 1999. Shortly after purchasing this car, Klinger notified Hartsock of its acquisition. Therefore, at the time of the November 7, 1999 accident, Klinger was covered by his existing Nationwide policy on his Ranger, and his reasonable expectation was that this coverage extended to both "physical damage" and "auto liability" related to the Caprice. Thus, Nationwide is responsible for any claims falling under this policy, including liability, stemming from the accident.

234

Accordingly, the court enters the following:

ORDER

And now, July 10, 2003, after a non-jury trial, the plaintiff's request for a declaratory judgment in its favor is denied; therefore, Nationwide Mutual Insurance Company is obligated to provide liability coverage and benefits with respect to claims arising out of the motor vehicle accident of November 7, 1999, involving the operation of the 1984 Chevrolet Caprice Classic by defendant Klinger.