LIBERTY MUTUAL INSURANCE COMPANY, Petitioner,

v.

Cynthia M. MALESKI, Insurance Commissioner for the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued March 17, 1995.

Decided April 27, 1995.

John Baginski and J. Eric Barchiesi, for petitioner.

Lynne E. Fitzwater, Dept. Counsel, for respondents.

Before McGINLEY and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Liberty Mutual Insurance Company (Liberty) appeals from an order and adjudication of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner) which 1) affirmed a determination by the Insurance Department (Department) that Liberty's cancellation of Kyle Leibach's insurance coverage violated the Act of June 5, 1968, P.L. 140, No. 78, *as amended*, 40 P.S. §§ 1008.1–1008.11 (Act 78 or Act); 2) ordered Liberty to cease and desist from cancelling the insurance; and 3) ordered Liberty to pay a $5000 penalty.

Leibach totalled his car on September 8, 1992. After Liberty denied coverage, Leibach filed a complaint with the Department alleging that he was never notified by Liberty that his insurance had been cancelled. After review of the complaint, the Department issued an Investigative Report/Order that Liberty's action was in violation of Act 78. Liberty requested a formal hearing,

which was held on February 8, 1993. On May 3, 1994, the Commissioner issued an order and adjudication affirming the Department's determination.

The Commissioner's findings of fact are summarized as follows. On August 7, 1992, Leibach applied for insurance coverage with Liberty by telephone conversation with sales representative Rick Lux. Policy premiums were to be paid by automatic deduction through Leibach's credit union upon Leibach's completion and signing of a deduction authorization form. Liberty bound coverage for ten days beginning August 7, 1992 and mailed Leibach application forms and the deduction authorization form. The forms included an "Incomplete Application Attachment" which states:

> Final acceptance of the insurance applied for requires submission to the company, **WITHIN TEN DAYS OF THE POLICY DATE REQUESTED,** of the completed signed application and **PAYMENT OF THE REQUIRED INITIAL PREMIUM,** if any.
> **PROVISIONS APPLICABLE ONLY IF INSURANCE APPLIED FOR IS BOUND**
> 1. Pending timely submission and final acceptance of the application and issuance of the policy, the insurance applied for has been bound, by the authorized representative countersigning the application, as of the allowable policy date and time applied for, but **NOT BEYOND THE BEGINNING OF THE ELEVENTH DAY** following such date.

(Commissioner's Decision, pp. 3–4.)

On August 17, Mr. Lux tried unsuccessfully to call Leibach because the forms had not been returned. On August 18, Liberty mailed Leibach a letter informing him that his failure to return the completed forms within ten days nullified Liberty's agreement to provide him insurance.

On August 24, Leibach called Mr. Lux to arrange to drop off the forms, at which time Mr. Lux informed Leibach that he was not insured. Leibach never returned the completed forms.[1]

The Commissioner concluded that Liberty's acts provided insufficient prior notice of cancellation, in violation of Act 78. The Commissioner relied on two prior unreported decisions, *Nationwide/Sammartino,* PH91–1–3 (1991) and *Tampa/State Farm,* P91–6–1 (1992), in which the Commissioner held that a minimum of fifteen days prior notice is required for cancellations within sixty days in order to give an insured adequate time to make other arrangements for insurance.

Liberty raises two issues on appeal to this Court: 1) whether fifteen days notice is required prior to the cancellation of insurance coverage provided under a ten-day binder, where a completed application is not received and no payment for premium has been made; and 2) if so, whether the imposition of a $5000 penalty is an abuse of discretion.

Section 6.3 of the Act, 40 P.S. § 1008.6(3), states that the Act does not apply to any policy in effect for less than sixty days, except that if an insurer cancels a policy within that time the insurer must supply the insured with a written statement of the reason for cancellation. The Act does not impose a statutory time frame for providing notice of cancellation within the first sixty days of coverage.

Liberty argues that although its binder provided insurance coverage for ten days, no policy was ever issued; there was no meeting of the minds regarding the terms of coverage and thus no contract existed. Rather, there was merely an expired offer to provide insurance. Liberty also contends that, even if a policy existed, coverage was terminated within sixty days and sufficient notice was provided to Leibach through the Incomplete Application Attachment and the letter and phone

---

1. The Commissioner made no findings regarding testimony by Mr. Lux that Leibach mailed some forms back, but not the deduction authorization form or an uninsured/underinsured form, following the August 24th phone call. Mr. Lux also testified that he left phone messages on August 26th and August 31st informing Leibach that he was not insured, that Mr. Lux sent a letter to Leibach on September 2nd, and also notified the credit union on September 2nd that Leibach was not insured. Leibach did not testify at the hearing; the record indicates that he was in the building on the day of the hearing but declined to sign in.

calls. Finally, Liberty asserts that, in the event a violation of Act 78 occurred, the penalty imposed was excessive because this is a case of first impression.

The Commissioner contends that Liberty's binder must be construed to be a policy. The Commissioner asserts that, by arguing that the insurance provided under the binder was only temporary, Liberty is seeking to avoid "the consequences of its own marketing practices". (Commissioner's Brief, p. 11.) The Commissioner suggests that if Liberty wishes to extract itself from the requirements of Act 78 it can simply stop issuing binders. Yet the Commissioner acknowledges that Pennsylvania courts have noted with approval, as sound public policy, the custom of the insurance industry to provide on-the-spot temporary coverage in the form of a binder until the application information can be verified and a formal policy issued. See Klopp v. Keystone Insurance Companies, 528 Pa. 1, 595 A.2d 1 (1991).

The Commissioner also argues that deference must be accorded to her interpretation of the Act, noting her prior decisions in *Nationwide* and *Tampa*. In *Nationwide*, the Commissioner held that twelve days was not sufficient notice of cancellation of a policy within the first sixty days. The Commissioner considered that Act 78 generally requires sixty days advance notice of cancellations; only fifteen days notice is required where cancellation is based on non-payment of premiums or the license suspension of the named insured. The Commissioner concluded that insureds whose coverage is cancelled for less serious reasons are entitled to no less notice, i.e., fifteen days.

Relying on *Nationwide*, the Commissioner held that the thirteen days notice provided in *Tampa* did not comply with the requirements of Act 78, that fifteen days prior notice was required in all cases where cancellations occur within the first sixty days.

However, the present case is factually distinguished from *Nationwide* and *Tampa* because in those cases the insureds had completed applications for insurance and there was no dispute that coverage was in effect under a policy, rather than a binder. We believe that the facts of this case warrant a

different analysis in order to determine what period of time is sufficient to provide adequate notice.

■ The courts have described a binder as "evidence that insurance coverage has attached at a specific time and continues in effect until either the policy is issued or the risk is declined and notice thereof is given." *Strickler v. Huffine*, 421 Pa.Superior Ct. 463, 468, 618 A.2d 430, 433 (1992), *petition for allowance of appeal denied*, 536 Pa. 630, 637 A.2d 290 (1993). As the Commissioner found that Leibach failed to return the completed application, there is no evidence that Leibach agreed to any terms of coverage, that he authorized Liberty to extend coverage or that he agreed to be liable for the cost of coverage. Accordingly, under the facts presented here, no formal policy was ever issued.

Both parties cite *Stevens v. Kemper Insurance Co.*, 384 Pa.Superior Ct. 263, 558 A.2d 113, *petition for allowance of appeal denied*, 523 Pa. 646, 567 A.2d 650 (1989), in support of their respective arguments. The Commissioner also relies on *Metropolitan Property & Liability Insurance Co. v. Insurance Commissioner*, 517 Pa. 218, 535 A.2d 588 (1987), in which the court held that Section 6.3 of Act 78 must be construed as requiring prior notice of cancellation.

In *Stevens*, the insured completed an application for coverage, made a payment toward his premium and was issued a binder. Ten days later, the insured was orally advised that coverage had been declined due to his driving record. The insured was sent written notice three days later and his premium payment was returned. Thus, in *Stevens*, notice was provided contemporaneously with the refusal to write. The insured had an accident two months later and the court held he was not covered, reversing the Commissioner's decision.

The *Stevens* court held that cancellation of a policy within sixty days must be preceded by written notification, and that an applicant who is refused coverage is also entitled to notice under Section 8(b) of the Act, stating the reason for refusal. The *Stevens* court adopted the rationale set forth in the su-

preme court's decision in *Metropolitan*, which held that in order to meet standards of fairness and due process, Section 6.3 of Act 78 must be interpreted as requiring prior notice of cancellation.[2]

In *Stevens*, the court held that all that was required was written notice of the reasons for the insurer's action which would give the insured notice of his situation so that he could contest the action or seek insurance elsewhere. However, the *Stevens* court declined to decide whether a binder is a policy, or whether the act of the insurer was a cancellation or a refusal to write, holding that in either instance the notice given in that case was sufficient.

Similarly, the facts of this case establish that Liberty provided sufficient notice to Leibach to preclude the possibility that he would unknowingly be driving without insurance. The notice afforded Leibach in the "Incomplete Application Attachment" clearly stated that the coverage provided under the binder would expire in ten days unless Leibach returned the completed forms to Liberty. Furthermore, Leibach's phone call of August 24th confirms that he knew he had no insurance on that date, which was fifteen days before his accident occurred.

 We agree that Section 6.3 of Act 78 must be construed to require prior notice of cancellation of insurance coverage which has been in effect for less than sixty days. As the Act does not establish a minimum notice requirement, and mindful of the concerns articulated by the supreme court, we conclude that the notice required under Act 78 is satisfied where the notice provides adequate time, prior to cancellation, to prevent an insured from unknowingly operating without insurance.

In this case, Liberty's application for insurance was accompanied by its "Incomplete Application Attachment" which provided ten

days notice of a cancellation which would occur unless specified acts intended to secure extended coverage were performed by the insured.[3] We conclude that ten days notice of cancellation which is issued contemporaneously with a ten-day binder of insurance satisfies the notice requirement under Section 6.3 of the Act.[4]

Accordingly, the order of the Commissioner is reversed.

## ORDER

NOW, April 27, 1995, the order of the Insurance Commissioner, dated May 3, 1994, in this case, is reversed.

2. *Metropolitan* involved the rescission of policies within sixty days, after claims had been submitted. The *Metropolitan* court expressed concern that, without prior notice of cancellation, a customer could find himself driving without insurance in violation of the Financial Responsibility Law, without knowledge of that fact, and could also unknowingly put himself and other drivers at risk.

3. We do not hold that notice would have been sufficient had those acts been performed, i.e., had Leibach completed the application and authorized payment of premiums.

4. Having thus decided, we do not address the issue of whether the fine imposed was excessive.