**Kelly R. MORRISON and Linda E. Morrison, husband and wife, Appellees,**

v.

**MOUNTAIN LAUREL ASSURANCE COMPANY, Progressive Casualty Insurance Company, Progressive Corporation, and Progressive Insurance Company, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1999.

Filed Feb. 16, 2000.

Reargument Denied April 19, 2000.

Jeffrey A. Ramaley, Pittsburgh, for Mountain Laurel Assur. Co., appellant.

Michael B. Jones, Aliquippa, for Kelly and Linda Morrison, appellees.

Before POPOVICH, JOYCE and TAMILIA, JJ.

JOYCE, J.:

¶ 1 Appellants, Mountain Laurel Assurance Company, Progressive Casualty Insurance Company, Progressive Corporation and Progressive Insurance Company (hereinafter collectively referred to as "Progressive"), appeal from the judgment entered in favor of Appellees, Kelly and Linda Morrison, in the amount of $100,000 for punitive damages based upon a finding that Appellants acted in bad faith. For the reasons set forth below, we reverse and remand for further proceedings consistent with this memorandum. The relevant facts and procedural history of this case are as follows.

¶ 2 In January of 1996, Appellees purchased an automobile insurance policy from Edward J. Herrle Agency which was issued by Mountain Laurel Assurance Company, a subsidiary of Progressive Corporation. Appellees paid the initial down payment of $315.18 on that date and were thereafter provided with a pre-printed payment schedule indicating payments were due on February 10, 1996, March 11, 1996, April 10, 1996 and May 10, 1996. Subsequently, Appellees were billed for the February 10, 1996 payment in the amount of $158.96. Appellees did not pay this amount by the due date.

¶ 3 Thereafter, Agent Herrle received a copy of a cancellation notice for the policy which was generated on the company's computer on February 15, 1996. On February 19, 1996, he telephoned Appellee, Linda Morrison, to advise her to send the payment immediately or the policy would be cancelled. A cancellation notice sent to Mrs. Morrison indicated that payment was due no later than March 3, 1996 by 12:01 a.m., fifteen (15) days after the cancellation notice, for the policy to remain in effect. The parties understood that to avoid cancellation, the payment had to be postmarked by the third of March.

¶ 4 On March 14, 1996, Appellee, Kelly Morrison, was involved in an automobile accident. Upon reporting this accident to Progressive, they were informed that no coverage would be afforded for this accident. Subsequently, Appellees instituted the suit underlying this appeal. Primarily, Appellees sought punitive damages contending the insurance companies acted in bad faith when they cancelled the policy and denied coverage.

¶ 5 A non-jury trial was held on July 29, 1998. At trial, Appellees claimed that the February 10, 1996 payment was mailed on March 1, 1996. Therefore, they argued the payment sent was postmarked prior to the March 3, 1996 deadline. Contrary to this contention, Progressive claimed that the postmark date was not until March 4, 1996, and therefore, the policy was properly cancelled. The trial court found in favor of Appellees, awarded punitive damages of $100,000, based on a determination that Appellants acted in bad faith when they cancelled the policy and subsequently denied coverage. Appellants' motion for post-trial relief was denied on May 11, 1999. This timely appeal followed.

¶ 6 Appellants raise the following issues for our review: (1) whether the trial court erred in determining that the insurance policy was not effectively cancelled by March 3, 1996 at 12:01 a.m.; (2) whether the trial court erred in finding that the premium payment was postmarked prior to the cancellation date; (3) whether the trial court erred in finding that Appellees proved bad faith conduct pursuant to 42 Pa.C.S.A. § 8371; (4) whether the trial court erred in finding that their conduct met the standard of outrageousness necessary for the imposition of punitive damages; and (5) whether the trial court erred in finding that they could be found liable for bad faith pursuant to the provisions of 42 Pa.C.S.A. § 8371.

¶ 7 Appellants initially contend that the trial court erred when it determined that the insurance policy was not effectively cancelled as of 12:01 a.m. on March 3, 1996.[1] Primarily, Appellants claim that they properly followed the statutory cancellation procedure and because payment was not postmarked until March 4, 1996, they properly cancelled coverage. We agree. The relevant statute provides that where, as here, the policy is to be cancelled within the first sixty (60) days of its issuance, the insurer solely needs to supply the insured with a written statement of the reason for cancellation. 40 P.S. § 991.2002(c)(3). This requirement is met where the insured is provided with a notice within an adequate time prior to cancellation to prevent the insured from unknowingly operating without insurance. *Liberty Mutual Insurance Company v. Maleski*, 658 A.2d 463, 466 (Pa.Cmwlth. 1995).

¶ 8 In this case, the parties do not dispute that a cancellation notice was effectively mailed on February 15, 1996 indicating the policy would be cancelled if payment was not sent by March 3, 1996 at 12:01 a.m. Instead, the parties disagree as to the time the payment was postmarked, with the parties agreeing that it is the postmark date which is indicative of the timeliness of the payment. The trial court determined that the record did not contain any evidence of the postmark date and therefore, the court would accept Appellees' testimony that the payment was mailed on March 1, 1996 as the date of the postmark. Despite this contention, the trial testimony reflects that the envelope was postmarked on March 4, 1996. N.T., 7/29/98, at 125. Based on this evidence and the ample time afforded to timely make payment, we are constrained to find that the trial court erred in determining

payment was timely received.[2] However, we do not end our inquiry upon this finding and address Appellants' bad faith and punitive damages claims.

¶ 9 Appellants next complain that the trial court erred in finding that they acted in bad faith pursuant to 42 Pa.C.S.A. § 8371. Relevantly, this statute states:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

The term bad faith has been defined by this Court as follows when referring to insurance:

Insurance. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*MGA Insurance Company v. Bakos*, 699 A.2d 751, 754 (Pa.Super.1997).

¶ 10 "A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not

---

1. We note that the second issue is addressed within our analysis of the first question, and therefore, make no further determination.

2. We note that Appellees purport to argue that payment could not possibly be made in a timely manner because March 3, 1996 fell on a Sunday. This argument, however, must fail as Appellees had the opportunity to pay by the appropriate date as adduced by the evidence at trial.

have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* at 754. "When evaluating bad faith under section 8371, a trial court may look to (1) other cases construing the statute and the law of bad faith in general, (2) the plain meaning of the terms in the statute, and/or (3) other statutes addressing the same or similar subjects." *Id.* at 755.

¶ 11 Appellants claim that Appellees failed to meet the requirements of proving bad faith. We agree. As we previously noted, we conclude Appellants properly denied coverage when the payment was not postmarked by the date due. Thus, Appellees failed to show that Appellants lacked a reasonable basis in denying the claim. We must therefore reverse the trial court's findings to the contrary and remand the case for judgment to be entered in favor of Appellants.[3]

¶ 12 Judgment reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

¶ 13 TAMILIA, J., files Concurring and Dissenting Statement.

TAMILIA, J., concurring and dissenting:

¶ 1 I join in the majority Opinion wherein it vacates the trial court's award of punitive damages in favor of appellees as I do not believe the requisite bad faith elements were established at trial.

¶ 2 I dissent to the conclusion of the majority which holds that cancellation of the policy was proper and thereby reverses the findings of the trial court. I do not believe appellant was in compliance with the Insurance Code or the Statutory Construction Act and would conclude appellant failed to disprove the timely mailing of the required payment.

---

**3.** Because of our determination in favor of Appellants that they did not act in bad faith, we note that issues four and five do not require review.