**Ted A. CRESSWELL, Individually and Ted A. Cresswell Construction, Inc., Appellants,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY and U.S.F. & G., Appellees.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.
Filed March 7, 2003.

Rodney L. Knier, Williamsport, for appellants.

Allan C. Molotsky, Philadelphia, for U.S.F.&G., appellee.

C. Kent Price, Harrisburg, for Pennsylvania National Mutual, appellee.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellants Ted A. Cresswell and Ted A. Cresswell Construction, Inc., appeal the entries of summary judgment in favor of Appellee Pennsylvania Mutual Casualty Insurance Company (PNMCI) and Appellee United States Fidelity and Guarantee, Co. (USF & G), in the Court of Common Pleas of Union County. Upon review, we affirm the grant of summary judgment with respect to Appellee USF & G and quash the appeal from the grant of summary judgment in favor of Appellee PNMCI.

¶ 2 The undisputed facts and procedural history are as follows. On October 10, 1984, Appellants entered into a written agreement with Domenick and Judith Ronco (the Roncos) to construct a two-story residence. Before commencing construction, Appellants executed two separate insurance contracts on the construction project. Appellants purchased policy # 056227490 from Appellee USF & G and policy # PL219011559–5 from Appellee PNMCI. The policy purchased from Appellee USF & G was titled a "builder's risk policy," and the policy purchased from Appellee PNMCI was titled a "commercial general liability policy."

¶ 3 Construction on the Ronco's home was completed on June 1, 1985. On that date, the Roncos took possession of the newly constructed home. After the Roncos took possession, problems and defects with the home began to surface. The Roncos contacted Appellants and informed them of the defects. After being informed of the defects in the home, Appellants advised the Roncos that the problems were a result of normal settlement typical of new residential constructions. As a result of Appellants' representations, the Roncos took no action to cure the defects in their home.

¶ 4 The Roncos discovered later that some of the cracks in walls of the home were a result of Appellants' failure to attach rain spouting properly, which caused water to be absorbed into the walls of the home. In addition to the problem with the wall cracks, the Roncos discovered a problem with the interior doors that made the interior doors difficult to open and close.

Consequently, in 1994, the Roncos employed an outside contractor to make the necessary repairs to the walls and doors. After examination, the contractor informed the Roncos that the defects with the home were a result of structural problems with the load bearing walls on the first floor of the home. Appellants, with the assistance of another contractor and a structural engineer, made initial attempts to correct the structural defects, none of which met with success. Eventually, the Roncos were forced to abandon their home because the structural defects rendered the home unsafe for habitation and susceptible to collapse.

¶ 5 On May 29, 1998, the Roncos filed suit against Appellants alleging negligence, breach of contract, breach of implied warranties, strict liability and violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et. seq.* On June 11, 1998, Appellants notified their insurance agent, the Sholley Agency, of the lawsuit by the Roncos. The Sholley Agency in turn notified Appellee PNMCI and Appellee USF & G of Appellants' claim on June 19, 1998. Thereafter, Appellees each denied Appellants coverage and refused to indemnify and defend Appellants in the Ronco litigation.

¶ 6 Appellants settled the Ronco lawsuit by making a payment of $21,250.00 to the Roncos. Appellants incurred $60,023.50 in attorney's fees and $6,356.25 in litigation costs as a result of the Ronco litigation

¶ 7 Appellants commenced the present litigation against Appellees and the Sholley Agency *via* a Praecipe for a Writ of Summons filed on June 28, 2000. Appellants filed a Complaint on January 29, 2001, seeking declaratory judgment that Appellees were required to provide indemnification for the Ronco litigation and that Ap-

pellees acted in "bad faith" in violation of 40 P.S. § 1171.5 and 42 Pa.C.S.A. § 8371.[1] Appellants sought damages in the amount of $21,250.00 (representing the settlement figure paid by Appellants to the Roncos), punitive damages, costs and attorney's fees from the Ronco litigation and the present litigation. Thereafter, Appellants filed an Amended Complaint on February 2, 2001.

¶ 8 Following timely Answers by Appellees, Appellee USF & G filed a Motion for Summary Judgment on August 28, 2001. On December 20, 2001, the trial court granted Summary Judgment in part in favor of Appellee USF & G. In its Opinion, the trial court indicated that Appellant's claims of bad faith against USF & G resulting from misrepresentation of policy terms presented a question of fact, and, as such, summary judgment was improper as to that claim. Appellants' other bad faith claims against Appellee USF & G were dismissed.

¶ 9 On January 15, 2002, Appellants filed a Motion for Summary Judgment against Appellee PNMCI. Appellee PNMCI filed its Answer and Cross–Motion for Summary Judgment on February 14, 2002. On April 25, 2002, the trial court denied Appellants' Motion and granted Summary Judgment in Appellee PNMCI's favor in the declaratory judgment action. Each of Appellants' claims against Appellee PNMCI were dismissed.

¶ 10 On April 2, 2002, during the pendency of Appellants' Motion for Summary Judgment, Appellee USF & G filed a second Motion for Summary Judgment on Appellants' remaining claims of bad faith by misrepresentation of policy terms. The trial court granted Summary Judgment on May 28, 2002, in favor of Appellee USF & G on Appellants' remaining claims of bad

---

1. Appellants did not name the Sholley Agency in the Complaint and discontinued the suit against the Sholley Agency by praecipe on January 25, 2001.

faith through misrepresentation of policy terms. In its Opinion, the trial court found that summary judgment was proper because Appellants were unable to present clear and convincing evidence of Appellee USF & G's fraud to make out a *prima facie* case for submission to a jury.

¶ 11 Appellants filed a Notice of Appeal to this Court on June 24, 2002, for both the grant of summary judgment in favor of Appellee PNMCI and Appellee USF & G.[2] The trial court ordered Appellants to file a Concise Statement of Matters Complained on Appeal pursuant to Pa.R.A.P. 1925(b), and Appellants complied with the order. The trial court did not author a new Pa.R.A.P. 1925(a) Opinion, but instead, relied on its Opinions of December 20, 2001, April 25, 2002, and May 28, 2002.

¶ 12 Appellants present the following questions on Appeal:

A. Whether the Trial Court erred as follows in regard to its [Order of December 20, 2001, granting partial summary judgment in favor of Appellee USF & G].

1. In finding that the exclusions to coverage in this matter precluded coverage under the policy of insurance between [Appellants and Appellee USF & G].

2. In finding that [Appellee USF & G] had no duty to defend [Appellants] in the underlying [Ronco litigation].

3. In finding that [Appellee USF & G's] refusal to defend and/or provide coverage were bad faith acts within the ambit of the Unfair Insurance Practices Act, 40 P.S. § 1171.1, *et seq.*, and/or 42 Pa.C.S.A. § 8371 (Actions on Insurance Policies).

B. Whether the trial court erred as follows in regard to its [Order of May 28, 2002, granting summary judgment in favor of Appellee USF & G].

1. In applying an actual fraud standard of care to the determination of [Appellee USF & G] and/or its agents/representatives.

2. In finding that [Appellee USF & G's] refusal to defend and/or provide coverage were bad faith acts within the ambit of the Unfair Insurance Practices Act, 40 P.S. § 1171.1, *et seq.*, and/or 42 Pa.C.S.A. § 8371 (Actions on Insurance Policies).

C. Whether the trial court erred as follows in regard to its [Order of April 25, 2002, granting summary judgment in favor of Appellee PNMCI].

1. In finding that the damages/problems regarding the Ronco home in the underlying litigation were not occurrences within the coverage of the poli-

---

**2.** Generally, orders that affirmatively or negatively declare the rights of a party are final and immediately appealable in declaratory judgment actions. *See* 42 Pa.C.S.A. § 7532. However, the trial court's partial adjudication of Appellants' declaratory judgment claims in favor of Appellee USF & G in the present case did not render the Orders final for purposes of appeal. *Cf. Bolmgren v. State Farm Fire and Cas. Co.*, 758 A.2d 689, 691 (Pa.Super.2000) (holding that grant of summary judgment in declaratory judgment action that does not dispose of all claims against a party in a multi-count complaint is not "final" for purposes of appeal). Because the trial court

withheld granting summary judgment on the Appellant's "bad faith" by misrepresentation claims against Appellee USF & G, the Orders by the trial court that granted partial summary judgment in favor of Appellee USF & G were not final and appealable. The Order of December 20, 2001, did not become final and appealable until the disposition of all claims against Appellee USF & G, *i.e.*, on May 28, 2002. Accordingly, Appellants' appeal from the grant of summary judgment in favor of Appellee USF & G is properly before this Court. We shall discuss the timeliness of the appeal from the grant of summary judgment in favor of Appellee PNMCI *infra*.

cy of the insurance issued by [Appellee PNMCI].

2. In finding that [Appellee PNMCI] had no duty to defend [Appellants] in the underlying litigation.

3. In finding that [Appellee PNMCI's] refusal to defend and/or provide coverage were not bad faith acts within the ambit of the Unfair Insurance Practices Act, 40 P.S. § 1171.1, et. seq., and/or 42 Pa.C.S.A. § 8371 (Actions on Insurance Policies).

Appellants' brief, at 8.[3]

¶ 13 Appellants' claims challenge the grant of summary judgment in favor of Appellees. We enunciated our standard of review for appeals from the grant of summary judgment in *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643 (Pa.Super.2002), as follows:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum,

only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. *Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.*

*Gutteridge*, 804 A.2d at 651 (citations omitted) (emphasis in original).

¶ 14 Appellant's first two claims present the same issue, *i.e.*, whether the trial court erred when it granted summary judgment in Appellee USF & G's favor. Appellant first argues that the trial court erred in its determination that the exclusions to coverage in Appellants' USF & G builder's policy precluded coverage. The trial court found that the purpose of the insurance policy was to insure against damage to the premises during the construction project while the premises remained under the control of the contractor. *See* Trial Court Opinion, 12/20/2001, at 3–4. As the action brought by the Roncos was brought after construction was completed and after the Roncos were in possession of the premises, Appellee USF & G was not charged with a duty to defend or indemnify Appellants in the Ronco litigation. *Id.* at 4.

¶ 15 Our role in the interpretation of an insurance policy is clear:

The interpretation of a contract of insurance is a matter of law for the courts to

---

**3.** We have renumbered Appellants' issues for purposes of organization.

decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract.

*Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 586, 640 A.2d 1234, 1235 (1994) (citation omitted). After a thorough examination of the insurance policy between Appellants and Appellee USF & G, we are satisfied that the trial court did not err in its determination that the terms of the policy precluded coverage for Appellants in the Ronco litigation.

¶ 16 The policy states the following:

PROPERTY COVERED

> We insure building and installation projects described on the Declarations Page.
>
> Projects shall mean buildings or structures **while in the course of construction, reconstruction, renovation or repair and installation projects.**

\* \* \*

WHEN COVERAGE BEGINS AND ENDS

> (a) **When your interest in the property ends;**
>
> (b) **When the purchaser accepts the property;**
>
> (c) The expiration date shown on the Declarations page;
>
> (d) The date the policy is cancelled.

\* \* \*

EXCLUSIONS—LOSSES NOT COVERED

> **Errors in Design—Faulty Workmanship or materials-we will not cover error or omission in a design, plan or specification, faulty workmanship or faulty material, but we**
> **will pay for the resulting damage (if not otherwise excluded).**

USF & G Builder's Risk Policy, 10/19/1984, at 1–2 (emphasis added).

¶ 17 Appellants argue that the exclusion clause of the insurance policy contains a latent ambiguity and should be construed against Appellee USF & G that required it to provide coverage for Appellants' claim. *See Redevelopment Auth. v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 588 (1996) (an ambiguity in insurance policy requires ambiguous provision be construed in favor of the insured). Specifically, Appellants argue that the exclusion clause creates a latent ambiguity because the exclusion clause states that the policy would not provide coverage for faulty workmanship, bad materials or design errors during construction, yet the policy would cover resulting damages that were otherwise non-excludable. Appellants' argument is without merit.

¶ 18 We have held repeatedly that an analysis of issues regarding coverage under insurance contracts requires an appellate court to examine the totality of the transaction involved in order to ascertain the reasonable expectation of the insured. *Redevelopment Auth.*, 685 A.2d at 588. Although we must consider the totality of the insurance transaction to ascertain an insured's reasonable expectation, an insured may not complain that his reasonable expectations were frustrated by policy limitations that are clear and unambiguous. *Id.*, 685 A.2d at 588. In the present case, the terms of the contract are clear and unambiguous as indicated by the "property covered" clause. The "property covered" clause indicates that a "project" would be covered only "while in the course of construction." USF & G Builder's Risk Policy, 10/19/1984, at 1. Further, the coverage offered by the policy terminates after the insured's interest in the construc-

tion project ceases or when the purchaser accepts the property. Thus, the plain and unambiguous terms of the contract indicate that coverage existed for damages resulting from faulty materials, poor workmanship or design error *only* for the period of time in which Appellants retained an interest in the home. The record indicates that the Roncos took possession of the home on June 1, 1985. Therefore, a plain reading of the insurance policy indicates that it terminated on June 1, 1985. Consequently, the problems that the Roncos discovered with the home after that date were not covered by Appellants' "builder's risk" insurance policy with Appellee USF & G, and the trial court did not err in its determination that the insurance policy covered only Appellants' interest in the home as an ongoing construction project.

 ¶ 19 As we have found that Appellee USF & G did not have a duty to provide coverage to Appellants, we also conclude that it is impossible for Appellants to demonstrate that Appellee USF & G lacked a reasonable basis for denying Appellants coverage in the Ronco litigation. *See Morrison v. Mountain Laurel Assurance Co.*, 748 A.2d 689 (Pa.Super.2000) (if there is no duty to provide coverage, failure to provide coverage cannot constitute bad faith); *see also Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa.Super.2000) (a "bad faith" claim must demonstrate by clear and convincing evidence that: (1) insurer lacked a reasonable basis for denying benefits; and (2) insurer knew or recklessly disregarded its lack of a reasonable basis). Thus, summary judgment in favor of Appellee USF & G with respect to Appellants' "bad faith" claim for Appellee USF & G's alleged denial of coverage was proper.

¶ 20 Appellants next argue that the trial court erred when it applied an "actual fraud" standard to Appellants' claims of bad faith by misrepresentation by Appellee USF & G. Paragraph 16 of Appellants' Complaint alleged the following:

> 16. Upon information and belief, the bad faith acts of [Appellee USF & G] include, but are not limited to, one or more of the following:
>
> a. Making, publishing, issuing or circulating documents which misrepresent the benefits, advantages, conditions or terms of the applicable insurance policy/ies.
>
> b. Making, publishing, issuing or circulating documents which use a name or title of the insurance policy which misrepresents the true nature thereof.
>
> c. Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

Appellant's Amended Complaint, 2/2/2001, at ¶ 16.

¶ 21 Appellants base the above claims of "bad faith" on the prohibitions found in the Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.1, *et seq.* In its Opinion of May 28, 2002, the trial court found that the above claims alleged a separate claim of intentional misrepresentation and analyzed the claims under an "actual fraud" standard. *See* Trial Court Opinion, 5/28/2002, at 3. Accordingly, to survive Appellee USF & G's Motion for Summary Judgment, Appellants had to present clear and convincing evidence of Appellee USF & G's intentional misrepresentation to the trial court. *See Id.* at 3 (citing *Highmont Music Corp. v. J.M. Hoffmann Co.*, 397 Pa. 345, 350, 155 A.2d 363, 366 (1959) (holding in order to warrant submission of fraud charge to a jury, evidence demonstrating fraud must be clear, precise and indubitable)). The trial court found that Appellants did not present clear and convincing evidence of Appellee USF & G's intentional misrepresentation, and, as

such, summary judgment was proper. *See* Trial Court Opinion, 5/28/2002, at 6.

■ ¶ 22 Appellants, on the other hand, contend that the assertion of misrepresentation claims is merely evidence of Appellee USF & G's "bad faith" and not a separate claim. As such, Appellants assert that the trial court should have applied the standard for proving "bad faith" claims adopted by this Court in *Terletsky v. Prudential Property and Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680 (1994), and its progeny. *See Terletsky*, 649 A.2d at 688 (a "bad faith" claim must demonstrate by clear and convincing evidence that: (1) insurer lacked a reasonable basis for denying benefits; and (2) insurer knew or recklessly disregarded its lack of a reasonable basis).[4]

■ ¶ 23 While Appellants' argument is novel, it does not save their claim from summary judgment. As shown above, *Terletsky* requires that Appellant show by clear and convincing evidence that Appellee USF & G lacked a reasonable basis for denying benefits and that Appellee USF & G knew or recklessly disregarded its lack of a reasonable basis. *See Terletsky*, 649 A.2d at 688. Here, Appellants baldly assert that Appellee USF & G misrepresented policy terms yet do not elaborate the time or the manner in which the alleged misrepresentation occurred. In Appellant Cresswell's deposition, he states:

> MR. CRESSWELL: When I left the [insurance agent's office] at any time or hung up the phone or whatever situation as in this case, I was under the understanding that I was getting full coverage on any scenario that could happen in a construction of any type of building, in reference to this particular building.

Cresswell Deposition, 3/14/2002, at 30 (emphasis added).

¶ 24 Thereafter, Counsel for USF & G asked Appellant Cresswell if the nature of the policy was explained to him, and he responded as follows:

> MR. CRESSWELL: I'm sure [the insurance agent] at that time explained to me what the all risk was or I wouldn't have just purchased something just because he said he needed an all risk. I'm sure he explained to me what it covered, but to what detail, I can't remember. That was 17, 18 years ago.

Cresswell Deposition, 3/14/2002, at 35.

■ ¶ 25 Cresswell further testified in his deposition that he did not read Appellee USF & G's policy in its entirety when he purchased it. *See* Cresswell Deposition, 3/14/2002, at 27. As Appellant Cresswell's deposition indicates, Appellants, as a matter of law, present no evidence that a misrepresentation of the terms of the insurance policy ever occurred in this case. Therefore, even if we consider all the evidence in a light most favorable to Appellants as the non-moving party, the evidence would not enable a fact-finder to infer reasonably that Appellee USF & G's conduct misrepresented policy terms. Accordingly, no genuine issue of material fact existed and summary judgment was proper. *See Gutteridge*, 804 A.2d at 651. Consequently, any error in analysis on the motion for summary judgment that the

---

4. We note that the UIPA does not create a private cause of action. *See Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa.Super.1999). Nevertheless, in *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901 (Pa.Super.1999), this Court held that conduct which constitutes a violation of the UIPA may also be considered when determining whether an insurer acted in "bad faith" under 42 Pa.C.S.A. § 8371. *See O'Donnell*, 734 A.2d at 906 (citing *Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1233 (1994)).

trial court may have committed was harmless.

¶ 26 As we have found that Appellants, as a matter of law, present no evidence to demonstrate that Appellee USF & G misrepresented policy terms in "bad faith," it is impossible for Appellants to now assert that policy coverage extended beyond the period of construction due to Appellee USF & G's alleged misrepresentations. Accordingly, Appellee USF & G owed no duty to provide coverage for the Ronco litigation. *See Morrison*, 748 A.2d at 692 (if there is no duty to provide coverage, failure to provide coverage cannot constitute bad faith). Therefore, we find Appellants' claim to be without merit and dismiss it.

¶ 27 We turn to Appellants' final claim: Whether the trial court erred in its Order of April 25, 2002, that granted summary judgment in favor of Appellee PNMCI. Before we reach an analysis of this claim upon its merits, we must consider whether this claim has been brought in a timely fashion and is thus properly before this Court. *See Morningstar v. Hoban*, 819 A.2d 1191, 1196 (2003) (timeliness of an appeal implicates the jurisdiction of an appellate court and may be raised *sua sponte*).

¶ 28 In *Nationwide Mutual Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000), our Supreme Court held that an order in declaratory judgment action that declares the rights and duties of a party constitutes a final order that is final and immediately appealable. *Wickett*, at 604, 763 A.2d at 818. Our Supreme Court refined its holding in *Wickett* in *Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491 (2002). In *Chalkey*, the Supreme Court limited *Wickett* by holding that the *Wickett* applied to declaratory orders based on pretrial motions. *Chalkey*, at 470, 805 A.2d at 496 n. 13. Presently, Appellant filed declaratory actions against both Appellee PNMCI and Appellee USF & G. It is clear from the record that the order granting Appellee PNMCI summary judgment was final as to all claims Appellants pursued against Appellee PNMCI because it declared that Appellee PNMCI owed Appellants no duty of coverage. Thus, pursuant to *Wickett* and *Chalkey*, the grant of summary judgment in favor of Appellee PNMCI was final and appealable on April 25, 2002. Appellant did not appeal the Order of April 25, 2002, until June 24, 2002, at which time he appealed the grant of summary judgment in favor of both Appellees. Accordingly, it is clear Appellant's appeal from the grant of summary judgment in favor of Appellee PNMCI is untimely because it was filed more than 30 days after an immediately appealable final order. *See* Pa.R.A.P. 1113(a); *see also* 42 Pa.C.S.A. § 7532. Therefore, this Court is divested of jurisdiction to entertain the appeal as to the grant of summary judgment in favor of Appellee PNMCI, and we must quash.

¶ 29 As we have addressed each of Appellant's claims and dismissed them, we affirm the grant of summary judgment as to Appellee USF & G and quash the appeal of the grant of summary judgment as to Appellee PNMCI.

¶ 30 Judgment affirmed in part. Appeal from the Order of April 25, 2002, quashed. Jurisdiction relinquished.

¶ 31 DEL SOLE, P.J. files a Concurring Statement.

CONCURRING STATEMENT BY DEL SOLE, P.J.:

¶ 1 I agree we are without jurisdiction to entertain the appeal of the order granting summary judgment in favor of Appellee PNMCI. I also agree that Appellee USF & G did not owe Appellants coverage

for the claims made against them. However, I do so for a reason different from that expressed by the Majority. In my view, the claim against Appellants is excluded by the plain language of the policy. The policy specifically excluded "faulty workmanship," while including coverage for damages resulting from such faulty workmanship. USF & G Builders' Risk Policy, 10/19/1984, at 2. The underlying claim was based on Appellants' failure to properly perform the work for which they were hired, not for damages to persons or property resulting from poor workmanship. The costs to repair the work completed by Appellants are not covered under the USF & G policy.