# Chrzan v. Lewis

C.P. of Lackawanna County, no. 99-CIV-3714.

*Gene E. Goldenziel,* for plaintiff.
*Alicia M. Caridi,* for defendant.

MINORA, *J.,* December 2, 2004—This action is before the court by way of defendant's motion for sum-

mary judgment. The plaintiff instituted this cause of action by filing a writ of summons on July 26, 1999, and subsequently a complaint on March 22, 2000, asserting an action in negligence. The defendant filed his response and discovery was subsequently completed. The defendant has since filed a motion for summary judgment to which the plaintiff filed her response and brief. This matter is hereby submitted on briefs and the necessity of oral argument has been waived upon agreement of the parties. The underlying circumstances of this matter are as follows.

## STATEMENT OF THE CASE

On or about July 27, 1997, at approximately 1 a.m., the plaintiff, Eugenia Mary Chrzan was driving her vehicle upon the roads of Dupont, Pennsylvania and was stopped at a red light when the defendant, Dale Lewis, failed to apply his brakes causing his vehicle to collide with the plaintiff's vehicle. As a result of the defendant's conduct, the plaintiff has suffered injuries, reportedly permanent in nature, including aggravation of pre-existing conditions, specifically injuries to the head; bilateral disc displacement; injuries to the temporomandibular joint (TMJ); injuries to the mandibular area; bilateral anterior meniscal displacement without reduction on mouth opening and with limitation of the degree of anterior excursion. (See medical reports attached to defendant's motion for summary judgment.) Additionally, as a result of the defendant's conduct, the plaintiff asserts that she experienced great physical pain and difficulty upon opening the jaw.

Prior to the auto accident, the plaintiff, Ms. Chrzan, was involved in a separate accident in Fort Lauderdale,

Florida. On March 6, 1994, the plaintiff was in a bar where she fell and struck her head, causing injuries, including an injury to her temporomandibular joint, also known as the TMJ. (See medical reports attached to defendant's motion for summary judgment.) Five months after this occurrence, Ms. Chrzan sought medical assistance whereby she learned of her injury to the TMJ and other facial trauma. (See report by Dr. Gary J. Weitz dated 8/5/1994; 7/20/1995.) Upon examination, it was revealed that there was mandibular deviation upon opening of the mouth causing her pain and discomfort and the plaintiff was diagnosed with temporomandibular joint dysfunction. (*Id.,* ¶¶3-6.) Ms. Chrzan received proper treatment on account of the incident and, in her April 18, 1996 visit, she received a prescription for TMJ physical therapy and was instructed to utilize her TMJ appliances as directed. It was not until March 17, 1997, that she started physical therapy for stiffness in her TM joints and pain and pressure while eating. After the 1997 auto accident Ms. Chrzan's existing injuries from the above described events supposedly inflamed and worsened. It is alleged that the car accident caused an exacerbation of the plaintiff's present injury to the TMJ. In addition, the plaintiff claims that she received a new injury, the non-reducing disc/dislocation. (See Dr. Stephen Smith report dated 7/12/04.)

The substance of the defendant's request for summary judgment is that the plaintiff is bound by her choice of insurance coverage, specifically the "limited tort" option in her automobile insurance policy, which precludes her from recovering noneconomic damages. (See generally, 75 Pa.C.S. §101 et seq. and 75 Pa.C.S. §1705(d).) The defendant asserts that the insured must be barred

from bringing an action for any noneconomic loss unless she can prove that her injuries cross the "serious injury" threshold. Here the defendant declares that any injuries sustained by the plaintiff on account of the car accident are not serious and therefore she may not recover for noneconomic losses.

The issue that this court is confronted with is two-fold. We must determine whether the defendant is entitled to summary judgment as a matter of law where the plaintiff sustained injuries in an automobile collision with the defendant, and where she selected "limited tort" coverage by her automobile insurance carrier? Yet, before that determination may be made, we must clarify whether the aggravation of the plaintiff's pre-existing injuries by the defendant's conduct satisfies the "serious injury" threshold under the "limited tort" option in an insurance policy pursuant to 75 Pa.C.S. §1702?

## DISCUSSION

### *The General Standard for Summary Judgment*

This court was confronted with a similar issue as the one currently before the court in *Krukowski v. Pep Boys,* 64 D.&C.4th 225 (2003). There we laid out the following standard to be followed in determining whether summary judgment should properly be granted.

Summary judgment may be granted only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Cresswell v. Pennsylvania National Mutual Casualty Insurance Co.,* 820 A.2d 172, 177 (Pa. Super. 2003). In determining

whether summary judgment is appropriate, the record must be viewed in the light most favorable to the non-moving party and all doubts regarding the existence of an issue of material fact must be resolved against the movant, who bears the burden of proving the absence of a factual dispute. *Al's Café Inc. v. Sanders Insurance Agency,* 820 A.2d 745, 748 (Pa. Super. 2003); *Downey v. Crozer-Chester Medical Center,* 817 A.2d 517, 524 (Pa. Super. 2003). "[O]nly when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment." *Cresswell, supra.* Thus, "[s]ummary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law." *David Pflumm Paving & Excavating Inc. v. Foundation Services Co.,* 816 A.2d 1164, 1167 (Pa. Super. 2003). See also, *Glazdick v. Whink Products Co.,* 104 Lacka. Jur. 262, 265 (2003).

## The "Limited Tort" Paradigm

Auto insurance companies offer their customers what is recognized as the "limited tort" option for auto insurance coverage under 75 Pa.C.S. §1705. *Furman v. Shapiro,* 721 A.2d 1125 (Pa. Super. 1998); see generally, Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§1701-1799.7. Pursuant to 75 Pa.C.S. §7105(a)(1)(A), the limited tort option restricts the insured's right to seek financial compensation for injuries caused by other drivers, specifically non-monetary damages for pain and suffering, unless the injuries sustained are categorized as a "serious injury" as set forth in the MVFRL. Recently, the Supreme Court of Pennsylvania held that the traditional summary judgment

standard was to be followed in limited tort cases while the determination of whether a "serious injury" exists should be made by the jury rather than the trial judge in all but the clearest of cases. *Washington v. Baxter,* 553 Pa. 434, 446, 719 A.2d 733, 740 (1998); *Furman, supra* at 1126. Therefore, in limited tort cases, summary judgment should only be granted under circumstances in which reasonable minds could not differ as to whether a "serious injury" has been sustained. *Furman, supra.* Below we will summarize the criterion to qualify as a "serious injury" through a brief examination of the statutory language and case law.

Under the MFVRL, "serious injury" is defined as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702. The Supreme Court in *Washington v. Baxter* adopted the definition of "serious impairment of body function" used by the court in *DiFranco v. Pickard* to define a "serious injury." See *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896, 900 (1986). The definition for "serious impairment of body function" states that:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment. . . . In determining whether the impairment was serious, several factors should be consid-

ered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *DiFranco,* 398 N.W.2d at 901.

We will next apply the present facts to the above *DiFranco* standard. At this point in our analysis, the focus has become whether the plaintiff has shown that she sustained a serious injury to the extent that a body function has been impaired?

As previously noted, all questions regarding whether a material fact does exist must be resolved in favor of the non-moving party. *Al's Café Inc., supra* at 748. Here the non-moving party is the plaintiff. The first question that must be resolved is what body function was impaired due to the injuries from the auto accident. The answer to this first factor is an exacerbation of an old injury to the temporomandibular joint, limiting the ability to open and close the mouth, with the addition of non-reducing disc/dislocation. The second factor causes us to ask whether the impairment to the TMJ was serious. In determining whether the injury was serious, it is necessary to note how the injury affected the body function and, moreover, the plaintiff's daily life. The body function is claimed to have been affected in such a way to cause the plaintiff pain, displacement, headaches, pain and pressure while eating, a decrease in range of motion and difficulty working out or performing at her job at the fitness center, in her school work and loss of the ability to bowl. (See Chrzan depo. pp. 31-34; medical reports attached to defendant's motion for summary judgment.)

Since the body function that was impaired from the current incident is an exacerbation of an old injury, let us start with the plaintiff's medical condition prior to the car accident. On August 5, 1994, Ms. Chrzan visited Dr. Gary J. Weitz for treatment on account of her fall while on vacation in Florida, when Ms. Chrzan struck the back of her head. At that point she was assessed as having bilateral temporomandibular joint dysfunction and she experienced frequent headaches in the frontal region, tinnitus on both sides and jaw joint pain bilaterally with other subjective symptoms. (See Dr. Gary J. Weitz report dated 7/20/95; medical records attached to defendant's motion for summary judgment.) Ms. Chrzan received a prescription for physical therapy but did not make use of it until March 17, 1997. Additionally, Ms. Chrzan failed to utilize her TMJ appliances and she declined the option of surgery. (See report dated 5/8/96 from Dr. Gary Weitz.) Yet, during this period Ms. Chrzan was able to continue to work. Following the car accident which occurred July 26, 1997, the plaintiff was examined by Stephen David Smith D.M.D. Her treatment with Dr. Smith began August 21, 1997. At that time, her jaws were dislocated and she experienced pressure, earaches and eye twitching. (See report of Dr. Stephen Smith dated 7/12/04.) She was diagnosed as having non-reducing TMJ discs, and surgery was suggested, yet Ms. Chrzan followed through with therapy instead, which improved her position considerably. Therapy continued for five months and Ms. Chrzan's condition was tolerable. (*Id.,* ¶7.) It was not until an independent medical examination (IME) was conducted upon Ms. Chrzan by Dr. Michael Smirne DDS on August 12, 2003, when the plaintiff complained of additional pain to the head, joints,

jaw, neck and shoulders. (*Id.,* ¶¶7-8.) Her injury was reported as permanent and serious, and pain occurred when Ms. Chrzan opened her mouth, chewed or put any pressure on her jaw. (See supplemental report of Dr. Stephen Smith dated 7/30/04.) Additionally, after a comparison of the MRI studies, the first conducted in September of 1994 and the second conducted August of 1997, there appears to be a considerable change from one report to the other, mainly the anterior meniscal displacement without reduction and bilateral anterior meniscal displacement. (See MRI report conducted by Dr. Andrew Baron dated 9/2/94; MRI report conducted by Dr. Jonathan Sullum dated 8/9/97.)

Judge Terrence Nealon in *Cordaro v. Hedderick,* 45 D.&C.4th 353 (2000), stated that objective medical evidence need not be produced to establish that impairment satisfies the serious injury test. *Cordaro v. Hedderick,* 45 D.&C.4th 353, 361 (2000). The length of time that an impairment continues is relevant, but the impairment injury does not have to be permanent to be deemed serious. *Id.* at 362. The court determined that one may have a serious injury even though that injury resulted from a pre-existing condition; furthermore, the aggravation of a pre-existing condition or injury to the same body part can constitute a "serious injury" and impairment to body function. There the court was confronted with an issue where it was necessary to determine if a plaintiff with a previous heart condition can suffer injuries brought about by the defendant's acts to the neck and back, so to constitute a serious injury and surpass the threshold under "limited tort?" There the court determined that the threshold had been met. Yet, this case is distinguishable from the present case at bar in that two separate injuries were

at issue, a heart condition verses neck and back injury. Presently, the main determination is based upon the same injury to the same body part; TMJ, only here the defendant's acts created a worsened infirmity to a pre-existing condition. This court has found that "a plaintiff who is already suffering from an ailment or disability at the time of an accident may nevertheless sustain a serious injury under 75 Pa. C.S. §1705." *Sekol v. Albrecht,* 51 D.&C.4th 235, 243 (2001); *Sanderson-Cruz v. USA,* 88 F. Supp.2d 388, 394 (E.D. Pa. 2000). (Doctor reported that the auto collision exacerbated the plaintiff's chronic back injury.) This is precisely the case before the court. Additionally, here we have an abundance of medical data which all proves to be pertinent, including a report of permanent injuries. (See report of Dr. Stephen Smith dated 7/12/04.) After careful consideration of all the relevant factors, including the medical reports and deposition testimony, there appears to remain a genuine issue of material fact as to whether the auto accident of Mr. Lewis and Ms. Chrzan caused a re-injury to the TMJ, or if the accident did not bring about an additional impairment.

Approximately four months before the car accident, Ms. Chrzan was seen by a physical therapist who noted in her report that the patient demonstrated signs of chronic bilateral temporomandibular joint dysfunction. (See report by Lee Ann Jones P.T. dated 3/17/97.) Her range of motion was limited to 1.5 fingers in width and protrusion and retraction of the jaw was functional but painful. (*Id.,* ¶3.) She was reported to have pain and difficulty eating and upon opening the jaw. *(Id.)* After Dr. Smith examined the plaintiff following the auto accident, her range of motion was only one finger in width while the

normal range would be three fingers in width. (See report of Dr. Stephen Smith dated 7/12/04.) Subsequent to the accident, the plaintiff also complained of pressure, shooting pain, earaches and eye-twitching. (*Id.,* ¶2.) According to the MRI conducted August 9, 1997, both TMJs were dislocated and she had a limited degree of opening, without reduction. Conversely, the report provided by Dr. Michael J. Smirne, hired by the defense counsel, opines that Ms. Chrzan experienced no limitation caused by the injuries complained of. (See report of Dr. Michael J. Smirne dated 8/12/03.) Clearly there still remains a question as to the impairment. Moreover, there is sufficient evidence to indicate that the plaintiff's condition worsened due to the car collision. Since only in the clearest of cases is the trial court judge to make the determination of the seriousness of injury, we cannot make this determination at this juncture. Therefore summary judgment is denied. An appropriate order follows.

## ORDER

And now, to wit, December 2, 2004, upon consideration of the defendant's motion for summary judgment, the verbal and written arguments of counsel and in accordance with the preceding memorandum, it is hereby ordered and decreed that the defendant's motion will be denied.