J-A13043-18

2018 PA Super 393

| | | |
|---|---|---|
| KELLY SYSTEMS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD S. FIORE, INC. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OGP ARCHITECTS, LLP, | : | |
| | : | |
| Appellant | : | No. 1714 WDA 2017 |

Appeal from the Order October 25, 2017
in the Court of Common Pleas of Blair County,
Civil Division at No(s):  No. 2017-GN-115

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.:                    FILED OCTOBER 31, 2018

OGP Architects, LLP ("OGP"), appeals from the Order granting the "Motion for Determination as to Necessity of Certificate of Merit" filed by Leonard S. Fiore, Inc. ("Fiore"), and declaring that Fiore was not required to file a Pa.R.C.P. 1042.3 Certificate of Merit in support of its Pa.R.C.P. 2252 Complaint (the "Joinder Complaint") to join OGP as an additional defendant. We affirm.

Fiore, a general contractor, was hired to build the "core and shell" of a building in State College, Pennsylvania (the "Project").  Fiore entered into a contract (the "Kelly Subcontract") with Kelly Systems, Inc. ("Kelly"), to install exterior wall panels on the building.  Fiore entered into a separate contract

(the "OGP Subcontract") with OGP to provide architectural designs for the Project. Kelly used the OGP drawings to calculate its bid for the Project and to complete construction.

On October 4, 2016, Kelly requested a change order with Fiore, pursuant to the terms of the Kelly Subcontract,[1] allegedly due to OGP's architectural drawings calling for an "impossible to construct" mounting system. Kelly advised Fiore that its proposed solution would cost $225,126.18 more than the original contract price. Fiore rejected the change order. Kelly subsequently submitted a letter to Fiore, requesting that Fiore reconsider the rejection, and advising that Kelly intended to proceed with its proposed solution. Fiore never accepted the change order, and Kelly continued to work on the Project, including implementing its proposed solution to the allegedly defective designs.

On January 12, 2017, Kelly filed a Complaint ("Kelly's Complaint") against Fiore, seeking, inter alia, payment of $225,000.00 for the additional

_____

[1] Paragraph 9 of the Kelly Subcontract provides, in relevant part, as follows:

> Before proceeding with any [w]ork involving possible claims by [Kelly] for extra compensation above the [original contract price], [Kelly] shall submit in writing to [Fiore] a detailed estimate of the price for such extra [w]ork and materials and shall secure from [Fiore] a written order describing such work and fixing [Kelly's] compensation. … Any change order work performed without [Fiore's] prior written authorization pursuant to the foregoing procedures shall be at [Kelly's] risk without right of payment or reimbursement under contract, quantum meruit or otherwise.

Kelly Subcontract, 7/20/15, at ¶ 9 (italicization added).

costs caused by the allegedly defective design. Fiore filed an Answer, in which it argued, inter alia, that it is not responsible for the additional costs allegedly incurred by Kelly. Fiore subsequently filed the Joinder Complaint, joining OGP as an additional defendant, and incorporating, without admitting, the allegations made in the Complaint. Fiore additionally alleged that "OGP's design documents and information provided under the [OGP S]ubcontract deviate from the acceptable professional standards ... [and] to the extent any of Kelly's alleged damages, in whole or in part, result from OGP's acts or omissions ... OGP is responsible and liable for Kelly's damages." Joinder Complaint, 3/17/17, at ¶¶ 17-18.

OGP filed a Pa.R.C.P. 1042.6 Notice of intent to enter judgment of non pros against Fiore, for Fiore's failure to file a certificate of merit with the Joinder Complaint. Subsequently, Fiore filed a Motion seeking a determination by the trial court as to whether Fiore was required to file a certificate of merit. Following a hearing and submission of briefs, the trial court entered an Order declaring that Fiore was not required to file a certificate of merit, because Fiore's negligence claim is related to the claims raised in Kelly's Complaint. OGP thereafter filed the instant appeal.

OGP's issue on appeal is as follows:

Whether the trial court erred in finding that [Kelly] pled a negligence claim against Fiore in submitting defective design specifications and/or in rejecting a change order as a result[,] and that therefore[,] Fiore's claims for contribution and indemnification against OGP by incorporation of [Kelly's] "bogus" averments[,] without verifying the truth thereof in the [J]oinder

- 3 -

[C]omplaint[,] related to the "acts of negligence" set forth in [Kelly's] [C]omplaint, which then did not require Fiore to file a certificate of merit under [Pa.R.C.P.] 1042.3(C)(2)[?]

Brief for Appellant at 6.

Prior to addressing OGP's claim, we must determine whether this Court has jurisdiction to entertain the instant appeal.[2] See Pennsy Supply, Inc. v. Mumma, 921 A.2d 1184, 1198 n.10 (Pa. Super. 2007) (stating that "[t]his Court may raise matters regarding its jurisdiction sua sponte."). This Court "has jurisdiction to entertain appeals taken (1) as of right from a final order, ... (2) from interlocutory orders by permission, ... (3) from certain interlocutory orders as of right, ... and (4) from certain collateral orders...." Redevelopment Auth. v. Int'l Ins. Co., 685 A.2d 581, 585 (Pa. Super. 1996) (citations omitted).

OGP alleges that its appeal is from a collateral order pursuant to Pa.R.A.P. 313. See Brief for Appellant at 2. OGP argues that the trial court's Order can be addressed without analyzing the underlying central issue of the case, i.e., Fiore's entitlement to damages, because whether Fiore must file a certificate of merit is a "procedural mechanism that does not resolve any substantive aspect of the claims." Id. According to OGP, resolving this issue is of great importance, because the rule regarding certificates of merit

_____

[2] On January 2, 2018, this Court issued a Rule to Show Cause why OGP's appeal should not be quashed as an interlocutory appeal. On January 19, 2018, following a Response from OGP, the Rule was discharged, but the issue was deferred for review by this panel.

- 4 -

"minimize[s] the time and expense that may be incurred" by the parties to the litigation. Id. OGP asserts that if its claim is not reviewed now, the protection granted by the certificate of merit rule – avoiding litigation of baseless claims – will be irreparably lost. Id. at 2-3.

> The collateral order doctrine
>
> permits a party to take an immediate appeal as of right from an otherwise unappealable interlocutory order if the order meets three requirements: (1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost.

Commonwealth v. Harris, 32 A.3d 243, 248 (Pa. 2011) (citing Pa.R.A.P. 313(b)).

> Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

Melvin v. Doe, 836 A.2d 42, 46–47 (Pa. 2003) (citation omitted). "In adopting a narrow construction, we endeavor to avoid piecemeal determinations and the consequent protraction of litigation. Such piecemeal litigation imposes a substantial burden on the orderly administration of justice." Rae v. Pa. Funeral Dirs. Ass'n, 977 A.2d 1121, 1129 (Pa. 2009) (citations and quotation marks omitted).

Here, the resolution of whether Fiore must file a certificate of merit requires no analysis of the merits of Fiore's underlying claim. See K.C. v.

L.A., 128 A.3d 774, 778 (Pa. 2015) (stating that "an order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." (quotation marks omitted)).

Additionally, there is a strong public interest in deterring frivolous negligence claims. See Geniviva v. Frisk, 725 A.2d 1209, 1214 (Pa. 1999) (stating that "[o]nly those claims that involve interests deeply rooted in public policy can be considered too important to [be] denied review." (quotation marks and citation omitted)); see also Warren v. Folk, 886 A.2d 305, 307 (Pa. Super. 2005) (stating that "[t]he goal of the certificate of merit is to weed out clearly nonmeritorious lawsuits early in the litigation process.").

Finally, OGP's claim that Fiore must file a certificate of merit would be irreparably lost if the matter proceeded to trial. Accordingly, OGP's appeal is from a collateral order, and we will review its claim on the merits.

"[T]he interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law. ... Accordingly, ... our standard of review is de novo, and our scope of review is plenary." Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity, 32 A.3d 800, 808 (Pa. Super. 2011) (citations and quotation marks omitted).

OGP contends that the trial court erred in finding that Kelly pled a negligence claim against Fiore, which allowed Fiore to not file a certificate of merit for its negligence claim against OGP. Brief for Appellant at 16, 19. OGP argues that Kelly's claims against Fiore are contract-based, whereas Fiore's

claims against OGP are tort-based. Id. at 19-21. OGP claims that Kelly did not allege any acts of negligence against Fiore, but instead, all of the averments in Kelly's Complaint revolve exclusively around the denial of Kelly's change order, which process is defined in the Kelly Subcontract. Id. at 20. OGP further alleges that the trial court failed to consider that Kelly's claims are based on the implied duty of good faith and fair dealing, which "arises under the law of contracts, not under the law of torts." Id. at 21 (citations omitted). Lastly, OGP alleges that it would be contrary to the spirit of the certificate of merit requirement for this Court to allow Fiore to pursue a professional negligence claim solely by "incorporation of [the] bogus averments" set forth in Kelly's Complaint, "without admitting the truth thereof." Id. (quotation marks omitted).

In its Opinion, the trial court addressed OGP's claim as follows:

> Specific rules of civil procedure apply for an action in professional liability by a patient or client of a licensed professional or a partnership, unincorporated association, corporation, or other entity responsible for a licensed professional who deviated from the professional standard. Pa.R.C.P. 1042.1[]. The rule lists professions covered by the rules, including architects. Pa.R.C.P. 1042.1(iii). An action in professional negligence is different from an action in ordinary negligence[,] as a complaint in professional liability concerns negligence which breaches a professional standard. See Merlini ex rel. Martini v. Gallitzin Water Auth., 980 A.2d 502, 507 (Pa. 2009). When a party alleges a deviation from the professional standard, the party is required to file a [c]ertificate of [m]erit either with the complaint or within sixty (60) days of filing the complaint. Pa.R.C.P. 1042.3(a). The [c]ertificate of [m]erit must state either:
>
> > (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable

probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3(a)(1)-(3). However, the filing of a [c]ertificate of [m]erit is not always required in certain instances relating to joinder or cross-claims. ...

[] A defendant or an additional defendant who has joined a licensed professional as an additional defendant or asserted a cross-claim against a licensed professional need not file a certificate of merit unless the joinder or cross-claim is based on acts of negligence that are unrelated to the acts of negligence that are the basis for the claim against the joining or cross-claiming party.

Pa.R.C.P. 1042.3(c)(2).

....

Fiore contends that it is not required to file a [c]ertificate of [m]erit, by and large, on the fact that it incorporated Kelly's [C]omplaint into their [Joinder] [C]omplaint and therefore[,] the "acts of negligence" are related to the "acts of negligence" in [Kelly's C]omplaint. OGP argues that Kelly's claims are in contract[,] and by incorporating Kelly's [C]omplaint, Fiore only alleges a contract claim on a contract where OGP is not a party, [thereby] making Rule 1042.3(c)(2) inapplicable. Because Rule 1042.3(c)(2) turns on whether the negligence alleged in the [J]oinder [C]omplaint is unrelated to the negligence [alleged in] [Kelly's Complaint], the [c]ourt must determine whether [Kelly's

C]omplaint sounds in either contract or negligence. If the claims in [Kelly's C]omplaint are contract claims, then any negligence alleged in Fiore's [Joinder] [C]omplaint is new negligence, unrelated to the claims in [Kelly's C]omplaint, and would force Fiore to file a [c]ertificate of [m]erit to assert any professional liability claims on OGP. If the claims in [Kelly's C]omplaint are in negligence, then the [c]ourt must analyze the claims to see if the claims are related[, thereby qualifying] Fiore's [Joinder] [C]omplaint [] under the rule.

To determine whether a complaint sounds a claim in contract or in negligence, courts in Pennsylvania have used an evolving doctrine known as the "gist of the action" doctrine. See Bruno v. Erie Ins. Co., 106 A.3d 48, 61-62 (Pa. 2014); Zell v. Arnold, 2 Pen. & W. 292 (Pa. 1830); Homey v. Nixon, 61 A. 1088 (Pa. 1905); Bash v. Bell Tel., 601 A.2d 825 (Pa. Super. 1992); eToll Inc. v. Elias/Savion Adver., 811 A.2d 10 (Pa. Super. 2002). In Bruno, the Supreme Court articulated the legal principles a court must use to determine the gist of the action doctrine, stating that a court must make a duty-based inquiry to determine whether the claim is in tort or contract:

> The substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract— then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Bruno, 106 A.3d at 68. Thus, if the claim offered is for a breach of a specific promise in the contract, then the claim will lie in contract[,] as the duty of the parties are purely contractual. However, if the claim is not based on the specific contractual promise, but rather on a duty that is owed independent of any

- 9 -

contractual promises, then the claim will lie in tort, even if the parties' relationship originates from the contract.

The relevant portions of [Kelly's C]omplaint … relate to a claim of monetary damages due to the defective specifications[, and state as follows]:

\* \* \*

6. Additionally, the architectural details regarding the mental [sic] panels were defective, in that they specified a system which was not possible to construct, as a result of which Kelly incurred extra costs exceeding $225,000.00. Kelly promptly and timely notified Fiore of the defects in the architectural details and of the fact that Kelly was incurring additional costs as a result thereof, and provided Fiore with an estimate of the extra costs together with a written request for a change order, on October 4, 2016. A true and correct copy of the aforesaid written request for a change order is hereto attached marked as Exhibit B.

7. Fiore, on or about November 14, 2016, rejected Kelly's request for a change order for extra costs resulting from the defective specifications. On December 1, 2016, Kelly, through counsel, requested in writing that Fiore reconsider its rejection. A true and correct copy of the written request for reconsideration is hereto attached marked as Exhibit C. Fiore has refused to reconsider its rejection of Kelly's request.

II. COUNT TWO - ACTION FOR DAMAGES RESULTING FROM DEFECTIVE SPECIFICATIONS

…

12. As a result of the defective specifications as outlines [sic] in Exhibits B and C hereto, and at the direction of Fiore and the architect on the Project, Kelly was forced to expend in excess of $225,000 in additional costs in order to complete the metal panel portion of the Project.

- 10 -

13. Despite Kelly's demand for a change order to recover those extra costs, Fiore has failed and refused same.

(Kelly['s] Complaint, ¶¶ 6-7, 12-13). Attached to [Kelly's C]omplaint are Exhibits B (a letter by Kelly to Fiore detailing their request for a change order and their estimates, totaling upwards of $225,000) and C (a letter from Kelly's counsel to Fiore, stating that the architectural details were inconsistent and impossible to construct[,] and that attempts at resolution were rejected by the architect, which forced Kelly to take more time and spend more money to finish their portion of the project).

Kelly's claim of monetary damages due to defective specifications is opaque on the issue of whether their claim is contractual in nature or sounds in negligence, whether the damages resulting to Kelly were because of the design defects, or whether the claim is that Fiore did not approve the change order due to the design defects, and thus, would be a contractual claim (as OGP argues). Paragraph 12 appears to claim negligence[,] stating that, as of a result of defective specifications, and at the direction of Fiore and the architect (OGP), Kelly was damaged in the amount of $225,000, spent by Kelly to finish the project. Paragraph 13, however, indicates that Kelly attempted to recover those costs through the [Kelly Sub]contract, but Fiore has refused to reimburse Kelly. In paragraph 6, Kelly claims that it timely notified Fiore of the change order[,] which is required [by] the [Kelly Sub]contract. Fiore, in its Answer, denied that Kelly was timely in its request, which would be dependent upon the [terms of the Kelly Sub]contract. Fiore also defends against Kelly's claims by arguing that Kelly has executed partial lien waivers and releases and that the extra work uncured by Kelly was not outside the scope of work for the project. Thus, there is merit to OGP's argument that Kelly's claim is a contract claim.

Count 1 is a claim by Kelly to recover the balance of the subcontract price that it believes will not be collected from Fiore. Facially, this is a claim that Fiore will not perform under the contract for finished work, and is a clear claim in contract. However, the basis of the claim in Count 2 was that the Kelly was provided with defective specifications, which they could not complete as specified, and sought a change order for those additional costs to complete their portion of the project, which

were denied by Fiore. In order to prove that the change order was justified and should have been accepted by Fiore, Kelly will have to use expert testimony to demonstrate [] that the design specifications were defective. As the change orders were premised on the alleged design defects, if the designs were not defective, Kelly cannot claim that Fiore improperly refused to grant the change order. Furthermore, Exhibit B, the proposed change order, indicates that Kelly believed the local code differed from the specifications that were used in Kelly's contract bid. Exhibit C, a letter from Kelly's counsel to Fiore, indicates their belief that the "architectural details on the project specified a system which was impossible to construct," and that "inconsistencies permeate the architectural details." The letter concludes, "[o]therwise, if we do not hear from you, Kelly reserves all rights to proceed with litigation to recover the extra costs incurred because of the defective drawings." Thus, the crux of the issue with the change orders will be whether designs relied upon by Kelly were defective.

Additionally, the [Kelly Sub]contract does not guarantee that a change order will take place. Paragraph 9 of the [Kelly Subcontract] states, in relevant part:

> Before proceeding with any work involving possible claims by Kelly for extra compensation above the price set forth in paragraph 1, Kelly shall submit in writing to Fiore a detailed estimate of the price for such extra work and materials and shall secure from Fiore a written order describing such work and fixing Kelly's compensation …[.] Agreement on any change order shall constitute a final settlement of all items covered therein, subject to performance thereof and payment therefore as provided in this agreement. If Fiore and Kelly fail to agree as to the amount of the adjustment, the work shall proceed as directed in writing by Fiore while the adjustment is being determined. Any change order work performed without Fiore's prior written authorization pursuant to the foregoing procedures shall be at Kelly's risk without right of payment or reimbursement under contract quantum meruit or otherwise.

[(Kelly Subcontract at 7).] This section does not contain any executory promises on behalf of Fiore to approve change orders

for Kelly, and work not authorized by Fiore will be at Kelly's risk. It does not appear that the damages claimed by Kelly flow from the contract, as Fiore is under no obligation under the contract to approve the change orders. However, the alleged damages come from why the change order was required and why the change order was not approved. Nowhere in the contract did Fiore promise to provide Kelly with designs that were without defects. Thus, the claim [regarding] the defective design is not based on the contract, but is rather based on whether Fiore was negligent in providing designs which contain alleged defects[,] or negligent in refusing the change order. Therefore, the [c]ourt believes that Count 2 of [Kelly's C]omplaint sounds as an action in negligence and not contract.

Thus, Fiore may still be covered under Rule 1042.3(c)(2), but the [c]ourt must [] determine if the negligence in the Fiore [Joinder] [C]omplaint is related to the negligence in [Kelly's C]omplaint. Fiore, in its [Joinder C]omplaint, incorporates the claims in [Kelly's C]omplaint without admitting to those claims, and argues that OGP is either solely liable for Kelly's damages or that OGP is liable to or with Fiore for Kelly's damages. Kelly's claim is that the defective design specifications caused Kelly to expend money, which Fiore refused to cover. Fiore then argues that if Kelly was damaged, then OGP, as design subcontractor and as administrator and evaluator of the change order requests, was liable for Kelly's damages and deviated from professional standards. In order for Fiore to prove that OGP was negligent, the same expert testimony and same evidence will be used to show whether the design specifications were defective and whether a change order should be granted in this instance. Fiore's [Joinder] [C]omplaint, through the incorporation of [Kelly's C]omplaint ..., adequately puts OGP on notice of the claims against it[,] and allows OGP to make a defense. Thus, the [c]ourt finds that the negligence alleged in the Fiore [Joinder] [C]omplaint is related to [the negligence alleged in Kelly's C]omplaint.

OGP makes an additional argument about the pleading in the Fiore [Joinder] [C]omplaint: by incorporating, but not admitting, [] Kelly's [C]omplaint, Fiore's [Joinder] [C]omplaint goes against the purpose behind the Rules of Civil Procedure concerning professional liability actions, which is to weed out non-meritorious actions by requiring the filing of a [c]ertificate of [m]erit[,] and allows Fiore to pursue a professional liability action without having to file a [c]ertificate of [m]erit.

In its research, the [c]ourt has found few actions where Rule 1042.3(c)(2) was at issue. However, in Supervalu Inc., v. Construction Engineering Consultants, Inc., 65 Pa. D. & C. 4th 449 (C.P. Allegheny, 2004), a similar though not entirely congruous situation to the present action, Judge R. Stanton Wettick of Allegheny County required a [c]ertificate of [m]erit to be filed by a defendant because the acts of negligence alleged in the defendant's joinder complaint involved different activities and different expert testimony to establish professional negligence against an additional defendant. However, in a footnote, Judge Wettick noted that the defendant also included claims that were incorporated by the defendant in their joinder complaint, and determined those claims did not require a [c]ertificate of [m]erit:

> I recognize that in this case[,] [defendant]'s complaint also incorporates the allegations contained in plaintiff[']s complaint. [Defendant,] even if it does not file a certificate of merit, may pursue these claims under the provision of Rule 1042.3(c)(2) that the joining party need not file a certificate of merit where the joinder is based on the same acts of negligence that are the basis of plaintiffs claim against the joining party. Thus, any judgment of non pros would not include the allegations in [defendant]'s complaint which expressly incorporate the allegations contained in plaintiff[']s complaint.

[Id. at 453 n.2.] Although the footnote does not state whether the defendant incorporated the claims of the plaintiff without admission, Judge Wettick understood Rule 1042.3(c)(2) to mean that if incorporated claims would result in the same negligence alleged, that negates the requirement of filing a [c]ertificate of [m]erit. [Id.] While OGP argues that this case is not binding on the [c]ourt, the [c]ourt notes that Judge Wettick's opinion is well reasoned[,] and cites the case for its persuasive value.

OGP does not offer any case law, statute, or rule for the proposition that, in a case where the defendant joins a professional who is covered under Rule 1042.3(c)(2), the defendant, by incorporating a plaintiff[']s complaint in its complaint against an additional defendant, must admit to the claims [made] against it by the plaintiff. However, what is present in the instant case is the interplay between the [c]ertificate of [m]erit rules, the joinder rules, and specifically, Rule

1042.3(c)(2). When joining an additional defendant under [Rule] 2252(a)(1), the claim does not move from the plaintiff to the additional defendant, but rather is an assertion by the defendant that the plaintiff[']s claim is actually against the additional defendant. Thus, the defendant is not asserting a claim against the additional defendant, but rather, through joining the additional defendant, is asserting that the cause of action should be against the additional defendant, and not itself.

OGP may have an argument under [Rule] 2252(a)(4), where joinder is allowed if the additional defendant is liable to or with the defendant, and thereby being liable to Fiore may require Fiore to file a [c]ertificate of [m]erit. However, the plain language of [Rule] 1042.3(c)(2) does not make such a distinction; the rule only requires that the acts of negligence against the additional defendant are related to the acts of negligence alleged by the plaintiff against the defendant. This is the importance of the requirement in Rule 1042.3(c)(2) that the "acts of negligence" in the complaint and the [joinder] complaint must not be unrelated. If unrelated, then a defendant is asserting an additional claim against the additional defendant, and a [c]ertificate of [m]erit must be required as it is the defendant's claim against the additional defendant. The [c]ourt sees nothing in the rules that requires a defendant to admit to the claims in a plaintiff[']s complaint in order to join an additional defendant in sole liability based on Pa.R.C.P. 2252(a)(1) and (4), and Fiore need[] not file a [c]ertificate of [m]erit if that joinder is based on acts of negligence that are related to the acts of negligence claimed by the [p]laintiff.

In conclusion, Fiore is not required to file a [c]ertificate of [m]erit in order to join [] OGP as [an] additional defendant pursuant to Pa.R.C.P. 2252(a)(1) and 2252(a)(4), as Fiore's [Joinder] [C]omplaint raises a negligence claim that is related to the claims made in [Kelly's C]omplaint.

Trial Court Opinion, 10/23/17, at 8-17 (brackets, footnotes and some citations omitted; italicization and emphasis added). We agree with the trial court's reasoning and determination, and therefore affirm on this basis. See id.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/31/2018